RYMER, Circuit Judge,
concurring in part and dissenting in part:
While I concur in the rest of the opinion, I part company with the majority’s decision to remand for an evidentiary hearing on diligence and, in turn, on the merits of Schad’s claim of ineffective assistance of counsel at sentencing.[1]
First, I believe that the district court faithfully construed AEDPA’s diligence requirement, properly applied 28 U.S.C. § 2254(e)(2), and correctly determined that during state postconviction proceedings, Schad did not make “a reasonable attempt, in light of the information available at the time, to investigate and pursue” his claim of ineffective assistance of counsel. Williams v. Taylor, 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Schad and his state habeas counsel knew from the presentence report that his childhood was abusive but that details about his family background were not proffered in mitigation at the penalty phase. This information was available at the time. He had neariy four years in state post-conviction proceedings to ferret out the affidavits and evidence presented for the first time in federal court. He was never denied a request for funding or help in state court. Instead of trying to try the issue in state court, Schad asked for thirty-four continuances and ended up presenting no facts to that court in support of this claim. Now, with the majority’s blessing, Schad is making the federal court sitting in habeas an alternative forum for trying facts and issues which he made insufficient effort to pursue in state proceedings. This is precisely what Williams says that federal courts should not become. Id. at 437, 120 S.Ct. 1479.[2]
Second, I disagree with the majority’s view that the district court improperly focused on the success of Schad’s state-court efforts, or that the weight of newly developed information has any role in the diligence inquiry. The district court properly focused on the notice, information, time and resources available to Schad, as well as on the causes for delay. See Schad v. Schriro, 454 F.Supp.2d 897, 951-53, 955-956 (D.Ariz.2006). I also disagree that this court should (or may) order an evidentiary hearing on diligence that Schad himself did not ask for, simply because the record seems to two of us to contain information that is inadequate to determine *1040 whether Schad’s efforts in state court were reasonable. It was Schad’s burden to show diligence, and if the record is insufficient to determine that Schad’s efforts were reasonable, then it was sufficient to determine they were not reasonable. That is what the district court found, and rightly so.
Finally, in these circumstances § 2254(e)(2) bars an evidentiary hearing on the merits of Schad’s ineffective assistance claim. Nevertheless the majority orders one if, on remand, the court determines that Schad was actually diligent. It does so without taking into account the district court’s alternative explanation why no hearing is required, without mentioning AEDPA, and without tethering the order to Strickland.[3] And I take issue with that.
As Schad did next to nothing in state court to develop the factual predicate of his ineffective assistance of counsel claim, he is barred from obtaining an evidentiary hearing on the merits of that claim in federal court. I would, therefore, affirm across the board.
I
Schad alleges that his counsel was ineffective at sentencing for failing to investigate Schad’s family background and to present corroborating evidence about the nature and effects of his abusive childhood.
In a nutshell, the record shows: Counsel’s mitigation case at sentencing emphasized Schad’s changed character and potential for rehabilitation. Fourteen people in the Phoenix area who had come to know Schad while he was incarcerated testified that they valued his friendship, good works, and positive contribution to their lives. Counsel also pointed out the emotional harm caused by Schad’s abusive childhood with an alcoholic father. For this he relied on the presentence report.[4]
Sentence was imposed in 1985 and affirmed on direct appeal in 1989. After a trip to the United States Supreme Court, Schad filed a post-conviction petition in state court on December 16, 1991. John Williams took over as counsel after the petition was filed, and was ordered to file a supplemental petition by February 18, 1992. That deadline was extended five times (February 14, March 18, April 17, August 6, and October 14, 1992). On November 3, 1992 Williams was replaced by Michael Chezem. Chezem successfully sought appointment of an investigator and funds (July 30, 1993), and also obtained twelve extensions (January 5, 1993, February 2, April 14, May 14, June 28, July 30, August 19, September 27, October 25, November 29, December 27, 1993, and February 1, 1994). On January 31, 1994, Chezem withdrew and was succeeded by Rhonda Repp. She obtained authorization for further investigative services in February 1994; on March 28, 1995, she asked for the services of a mitigation expert, *1041 which the court approved on July 6, 1995. Meanwhile, she asked for and received a series of extensions on the ground that she and the investigator had not completed their investigation and located all potential witnesses (February 16, 1994, March 18, April 22, May 24, June 23, July 22, August 30, September 27, October 31, November 21, December 28, 1994, January 18, 1995, February 21, April 20, May 22, June 20, July 21, August 22, and September 20, 1995). On September 20, 1995 the court ruled that no further continuances would be granted. A supplemental post-conviction petition was filed on October 19, 1995, together with a request for an evidentiary hearing on the basis of “newly discovered evidence.” The newly discovered evidence consisted of an affidavit by the mitigation expert, Holly Wake, expressing her opinion that the presentence report failed adequately to address the seriousness of Schad’s abuse; it contained no new facts and identified no witnesses. The state court denied the ineffectiveness claim in July 1996 for lack of any specifics.
Schad’s federal petition was filed December 16, 1997; an amended petition was filed August 3, 1998. The following year Schad presented newly developed information together with a request for an evidentiary hearing on the merits of his ineffectiveness claim.[5] The district court found that Schad knew the factual basis for his claims at the time of postconviction proceedings, and had not shown that the newly developed information was not available during that period. The court rejected Schad’s argument that post-conviction counsel were diligent because they asked for time, funds, and a hearing to investigate, develop, and present evidence. As the court explained, post-conviction counsel requested and were granted thirty-four extensions, delaying proceedings for four years, and were provided with funds, an investigator, and a mitigation expert. Likewise, the district court found that reasonable counsel with the time and funding available to postconviction counsel would have presented evidence in support of Schad’s position that his family background was not adequately explored by trial counsel. Further, the court found, the state court did not unreasonably deny an evidentiary hearing given that only conclusory claims were made about additional mitigation evidence. Accordingly, because Schad did not “ ‘undertake[ ] his own diligent search for evidence’ in state court,” the court held that Schad was not entitled to an evidentiary hearing or to expand the record. Schad, 454 F.Supp.2d at 956 (quoting Williams, 529 U.S. at 435, 120 S.Ct. 1479).
*1042 II
New evidence may be introduced on federal habeas “only if respondent was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed by § 2254(e)(2) were met.” Holland v. Jackson, 542 U.S. 649, 652-53, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004) (citing Williams, 529 U.S. at 431-37, 120 S.Ct. 1479).[6] This rule applies to requests for evidentiary hearings, and whenever parties seek relief based on new evidence. Id. The rule also covers a motion to expand the record under Habeas Rule 7.[7] Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir.2005).[8]
Schad does not argue that the exceptions permitting a hearing or admission of new evidence under § 2254(e)(2)(A) or (B) apply. Thus the lone issue is whether he failed diligently to develop the factual basis for his claim in state court proceedings.
“Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner’s counsel.” Williams, 529 U.S. at 432, 120 S.Ct. 1479. “Diligence for the purposes of the opening clause depends on whether the prisoner made a reasonable attempt, in light of the information available, to investigate and pursue claims in state court[.]” Id. at 435, 120 S.Ct. 1479. “The failure to investigate or develop a claim given knowledge of the information upon which the claim is based, is not the exercise of diligence.” Cooper-Smith, 397 F.3d at 1241 (citing Williams, 529 U.S. at 439-40, 120 S.Ct. 1479). The petitioner bears the burden of showing diligence. See Williams, 529 U.S. at 440, 120 S.Ct. 1479 (concluding that petitioner met the burden of showing he was diligent in efforts to develop the facts supporting certain claims).
The district court applied these principles, and did so correctly in my view. The presentence report disclosed that Schad’s childhood was abusive and unstable, that he had siblings, that his father was an out-of-control alcoholic whom Schad had sought to have committed, that Schad was forced to endure beatings and isolation, and that neither parent stood up for him or gave him attention or affection. This put postconviction counsel on notice that details of Schad’s family background beyond those brought out at sentencing might be mitigating. Notice of the need to develop evidence is an important marker of diligence. In Williams, for example, *1043 the Court found that the petitioner was not diligent in developing facts in support of a Brady claim in part because the trial transcript put the petitioner’s habeas counsel on notice of possible exculpatory evidence, but loas diligent in developing juror bias and prosecutorial misconduct claims in part because nothing in the record “would have put a reasonable attorney on notice” of misconduct. 529 U.S. at 437-44, 120 S.Ct. 1479. In line with Williams, I would conclude (as the district court did) that Schad knew the factual basis for his claims during postconviction proceedings.
Further, the information newly developed for federal court was available during state court proceedings. Indeed, Schad told the district court that the newly discovered mitigating evidence was “readily” available at the time of sentencing, but wasn’t presented due to defense counsel’s lack of investigation — and that had counsel only looked, he would have found it.[9] It follows that the newly discovered information was readily available to post-conviction counsel as well, but wasn’t adduced due to lack of investigation.
Schad had plenty of time (four years) and resources (all he asked for) to pursue the claim; he just wasn’t persistent. His efforts consisted of one telephone call in 1993 by an investigator to Schad’s mother and his request for an evidentiary hearing.
In the phone call, Schad’s mother said that Edward was a good boy, declined to say where his siblings were, and hung up. She was apparently reluctant or afraid to talk about her son over the phone with someone she didn’t know,[10] which is perfectly understandable. However, there was no follow-up. Schad also asked for an evidentiary hearing in state court, which, if well-founded, might show diligence-but it doesn’t here because he offered no facts and identified no witnesses in support. Cf. Williams, 529 U.S. at 437, 120 S.Ct. 1479 (noting that “[diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.”). So far as the record reveals, that’s it for effort.
There is no evidence that the state impeded those efforts. Schad’s requests for professional assistance and funds were granted. All but the last extension he sought for filing a definitive petition in order to investigate, locate witnesses, and review the file were granted.[11]
The majority faults the district court in part because it ruled without “appropriate consideration of the many reasons Schad offered for his inability to produce the mitigating evidence during the state proceedings.” Maj. op. at 1022. I disagree: The district court did consider the reasons *1044 advanced by Schad, but found them wanting-as do I. For instance: Schad argued that the state court did not allow time and a hearing to develop his claims; the district court rejected this excuse given that his counsel asked for, and received, thirty-four extensions, resulting in a delay of four years. 454 F.Supp.2d at 955. Schad also complained about the “chaos” occasioned by being represented by multiple attorneys; the district court rejected this excuse because one counsel alone had twenty-one months (and nineteen extensions) to complete the investigation and file a supplemental petition. Id. Schad posited that a denial of funds posed a roadblock; the district court rejected this excuse as Schad was unable to point to any funding request that the state court denied. Id. To the contrary, as the district court observed, the record demonstrates that the state court facilitated Schad’s investigation and development of evidence by appointing an investigator (who was on the case for more than two years) and a mitigation specialist. Although the mitigation specialist was only appointed three months before the supplemental petition was filed, counsel had been on the case for over a year before she requested such an appointment and, as the district court found, even a year later when the specialist filed her supplemental affidavit (July 7, 1996), she was able to make only conclusory claims about the existence of additional, unspecified mitigation evidence. Id. And Schad maintained that the state court denied him an opportunity to develop his claims in an evidentiary hearing; the district court rejected this excuse because the state court’s refusal to hold an evidentiary hearing was attributable to Schad’s failure to develop a factual record that would have warranted a hearing.[12] Id. at 955-56.
Rather than acknowledging what the district court actually considered and found, the majority identifies “several difficult obstacles” that it believes Schad faced in attempting to develop a factual basis for his ineffective assistance claim in state court that led to his being unsuccessful in bringing out any significant mitigation evidence during his state habeas proceedings. Maj. op. at 1033-34. These are that Schad’s family members weren’t cooperative; counsel had difficulty assessing records generated during a decade of prior proceedings; these difficulties somehow “resulted in” three changes in counsel; and the state post-conviction court set a deadline for filing the supplemental petition three months after appointment of the mitigation specialist. However, neither alone nor in combination do these “obstacles” indicate that Schad made a reasonable effort to develop a record in state court in light of available information to which he was timeously alerted.
So far as family cooperation is concerned: The only evidence in the record is that in 1993, Schad’s mother unsurprisingly hung up on a phone call by an investigator she didn’t know; that she wouldn’t tell him where Schad’s siblings were; and that even though Schad had written them, his siblings had not responded. So far as appears, no follow-up or attempts to engage other family members were made.[13]
*1045 So far as accessing records is concerned: Schad made no showing that he was thwarted in developing in state proceedings the newly developed information produced in federal court such as his mother’s medical records, his father’s VA records, and evidence that he had to pay his own way around the house and procure alcohol for his father. As the district court noted, the rest of what the mitigation expert later gleaned from Schad’s mother, sister, and aunt, is similar to information in the presentence report. Beyond this, Schad failed to link whatever difficulty he may have experienced in getting records from the Arizona prison and those from out of state to his ability to present the claim at issue here — ineffectiveness of sentencing counsel in failing to pursue family background — and none appears. The same applies to records from his first trial.
So far as multiple counsel is concerned: No basis appears for supposing that difficulties in developing a record led to multiple counsel, or vice-versa. In any event, all else aside, Schad’s last post-conviction counsel had ample time (more than fifteen months to file the supplemental petition and twenty months before state proceedings were concluded), enough continuances (nineteen), and the assistance of an investigator and mitigation specialist, to develop the claim.
So far as the state court’s final deadline is concerned: The district court explained why it was neither unreasonable nor material. Schad had been given more than thirty extensions and four years to get his act together. He failed to seek appointment of a mitigation expert for more than three and a half years. Even so, a year later the mitigation specialist was still unable to offer anything concrete.
For these reasons, I would hold that Schad did not meet the burden of showing that he was diligent in efforts to develop the factual basis for his ineffective assistance of counsel claim in state court.
Ill
The majority’s analysis does not persuade me otherwise. The per curiam concludes that the district court applied an incorrect diligence standard — focusing, in its view, on the lack of success rather than the reasonableness of Schad’s efforts to develop a record in state court — and remands for an evidentiary hearing under the “proper” standard to determine whether Schad was diligent. Maj. op. at 1034-35. I do not agree that the district court failed to measure up, or that an evidentiary hearing is needed or appropriate.
In Williams, the Commonwealth of Virginia argued that the only question for purposes of the introductory clause of § 2254(e)(2) — the clause that states “[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings” — is whether the factual basis was indeed developed in state court. The Court disagreed that this captured the fault concept implicit in the clause, and explained:
The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of “failed” is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend, as the Commonwealth would have *1046 it, upon whether those efforts could have been successful.
529 U.S. at 435, 120 S.Ct. 1479. Thus, the “success” enjoinder simply means that the introductory clause looks at more than the mere fact that a record was not developed in state court. The “more” is diligence.
The district court followed this standard from Williams exactly. It focused on whether Schad’s attempts to develop the record in state court were reasonable given what he knew, the information available at the time, and the four years plus funding that he requested and got. This applied the correct standard and adopted the right focus. In accord with Williams, the district court’s conclusion was based on the fact that Schad had notice of the basis for his ineffectiveness claim from the time of sentencing, had nearly four years to develop the record before the state post-conviction court, and pointed to no request of the state court for funding or anything else that was unreasonably denied.
Moreover, this conclusion is consistent with the outcome in Williams itself. There, the Court was concerned with three different claims; it found lack of diligence as to one (a Brady claim) but not the others (juror bias and prosecutorial misconduct claims). In the two claims on which the Court found diligence the trial record contained no evidence that would have put a reasonable attorney on notice of the misconduct, thus there was no basis for an investigation; also, counsel requested funding for an investigator, which the state court denied. By contrast, in the claim on which the Court found no diligence, the transcript put state habeas counsel on notice of an undisclosed report’s existence and its potential materiality. The only indication that habeas counsel made some effort to investigate the Brady material was one letter; no further efforts were made. As the Court said, a diligent attorney would have done more. Id. at 439-40, 120 S.Ct. 1479. Schad’s situation is almost identical. The presentenee report put post-conviction counsel on notice of the importance of Schad’s family background; one phone call was made to Schad’s mother; and no further efforts were made. As the district court said, a reasonable attorney provided with the time and funding to which post-conviction counsel had access would have done more. Schad v. Schriro, 454 F.Supp.2d at 956. Consequently, the efforts in Schad’s case fall on the not-diligent side of the ledger, just as did the efforts in Williams on the Brady claim.
In sum, I think the district court got Williams precisely right. By the same token, I think the majority’s emphasis on “success” misapprehends Williams. Also, I think the majority’s focus on the strength of the newly developed evidence is itself improper.
Without explaining why, in the middle of its discussion about the “proper” standard for diligence, the majority posits that the newly developed information “would have demonstrated at least some likelihood of altering the sentencing court’s evaluation of the aggravating and mitigating factors present in the case.” Maj. op. at 1034. However, considering the weight of evidence newly developed for federal court is nowhere grounded in § 2254(e)(2) or Williams.[14] It seems exactly backward to *1047 me. We are not supposed to start with the evidence newly developed for federal court, then determine whether that evidence has “some likelihood” of altering the sentencing court’s evaluation, then decide that the petitioner made a threshold showing of reasonably attempting to develop it in state court. Rather, we are to start with diligence — asking whether the factual basis was developed in state court and if not, whether there is lack of diligence or some greater fault attributable to the petitioner — and never get to the weight of the newly developed evidence unless the petitioner bears no responsibility for failure to develop and present that evidence in state court. Put differently, evidence that could have been adduced in state post-conviction proceedings i/the petitioner were diligent, should play no role in a finding that he was diligent. The effect otherwise is to write § 2254(e)(2)’s diligence requirement off the books.
Neither is there basis for requiring an evidentiary hearing on diligence. Schad never asked for one. The majority doesn’t say that the district court had a sua sponte obligation to hold an evidentiary hearing, nor does it cite authority for any such thing, yet it orders the hearing sua sponte, for which, again, it points to no authority. More importantly, the record is what it is. Schad had the burden of showing he was diligent in his efforts. Prom the parties’ submissions on this point, the district court could determine whether post-conviction counsel were on notice of the need to develop facts relating to Schad’s family background and made reasonable efforts to do so in light of the information then available in the time, and with the resources, they had. The district court made that determination, and I think we should review it and affirm. The majority punts because it believes that there is too little information in the record to determine whether post-conviction counsels’ efforts were reasonable. Maj. op. at 1034-35. However, lack of evidence of diligence in the state and federal record does not compel an evidentiary hearing, but rather, compels denial of Schad’s request for an evidentiary hearing on the merits of his ineffective assistance claim. This is because he had the burden of showing he was diligent, didn’t meet it, and § 2254(e)(2) accordingly bars an evidentiary hearing on the merits of his constitutional claim.
IV
Because I would affirm the district court’s conclusion that Schad failed to exercise diligence in developing the factual basis of his ineffectiveness claim in state court, I have no need to reach the question whether he is entitled to an evidentiary hearing on that claim given that a hearing is statutorily barred by § 2254(e)(2). However, the majority does reach the issue, directing the district court to hold an evidentiary hearing on the merits of this claim if it finds in the other evidentiary hearing — on diligence — that Schad’s efforts to develop the record in state court were reasonable. Maj. op. at 1034-35. I note that it does so without regard to the district court’s extensive and reasoned holding in the alternative that, even considering the newly developed information, Schad was nevertheless not entitled to an evidentiary hearing on his ineffectiveness claim.[15] It also does so without regard to the state court’s ruling that denied Schad’s ineffectiveness claim on the merits. And it *1048 does so without reference to AEDPA, Strickland, or the double deference owed to state court adjudications under Knowles v. Mirzayance, - U.S. -, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009). See Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (holding that a court considering a request for an evidentiary hearing “must take into account” the deferential standards of § 2254(d), and a hearing is not required “if the record refutes the applicant’s factual allegations or otherwise precludes habeas relief’). In my view, it is inappropriate to order an evidentiary hearing on an ineffective assistance claim without touching these bases.

Conclusion

If a state prisoner can show that he indeed tried to develop facts in state post-conviction proceedings in support of an ineffective assistance of counsel claim, then he should be able to proceed in federal court on newly developed evidence because the principles of comity underlying § 2254(e)(2) will not be offended. But those principles will be offended if a state prisoner lets opportunity pass by without giving the state courts that convicted and sentenced him first crack at a claim that his constitutional rights were violated in the process.
Given that Schad had notice during post-conviction proceedings of the need to develop facts about his family background to support his claim of ineffective assistance of sentencing counsel, and the information available at the time, together with the opportunity afforded to develop that information in four years, with thirty-four extensions and with all the funding requested, I agree with the district court that Schad failed to show he was diligent in efforts to investigate and present those facts in state court.
The district court properly applied the governing standard from Williams v. Taylor: whether Schad made “a reasonable attempt, in light of the information available at the time, to investigate and pursue” his constitutional claim. 529 U.S. at 435, 120 S.Ct. 1479. Its analysis did not stop with the predicate question whether the factual basis was actually developed in state court. Rather, its focus was on the notice, information, time and resources available to Schad, as well as on the causes for delay. I would not remand for an evidentiary hearing on diligence that was neither requested nor required. As Schad did not develop the factual basis for his ineffective assistance claim in state court proceedings, no evidentiary hearing on the merits of that claim may be held. I would, therefore, affirm.

. I concur in Section III of the per curiam opinion with respect to Schad’s challenges to his conviction, and with respect to sentencing, in Sections IV.D.2 (the state courts’ consideration of mitigating evidence) and IV.D.3 (the state courts’ application of aggravating factors). I dissent only from Section IV.D.l.

. As the Court explained in Williams:
Comity dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the stale courts should have the first opportunity to review this claim and provide any necessary relief. For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.
529 U.S. at 437, 120 S.Ct. 1479 (internal quotes, alterations, and citations omitted).

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984).

. The presentence report indicated that Schad reported "a very stormy childhood, with his father being an alcoholic and abusing the defendant on a regular basis.” Schad’s father beat him with his fist and never allowed him to socialize with others. Schad often accepted beatings to protect other members of his family. Schad kept his problems to himself and had yet to deal with the feelings regarding his life. At the age of seventeen, Schad tried to commit his father to the VA Hospital for treatment because his father was out of control due to alcoholism. However, his mother took his father’s side and Schad was given the worst beating of his life. Schad left home at eighteen, once he graduated from high school. His father died when Schad was incarcerated on the Utah offense, and his last contact with his mother was in 1978 when she was drinking and he figured it was better not to stay around. Schad hadn’t had contact from his siblings since the Arizona murder, but did write them.

. The newly developed information submitted in support of Schad's federal ineffective assistance claim includes an affidavit from his mother recounting her experiences with Schad’s father; an affidavit from an investigator reciting a conversation with Schad’s sister, which describes what it was like to grow up in a poor household with cold and distant parents who showed no affection for their children, and with his aunt, who discussed the religious upbringing of the Schads, Mr. Schad’s war experiences, and the death of Schad’s infant sister; employment records of Schad’s mother (indicating that she was prescribed narcotics for injuries) and Veterans’ Administration records of Schad’s father (showing that he returned from the war with a disabling anxiety disorder and alcoholism); an affidavit by a clinical psychologist, Dr. Leslie Lebowitz, noting that Schad's family was dysfunctional and the violence and neglect the children experienced left them at a tremendous disadvantage when faced with challenges of adult life; and an affidavit by a clinical psychologist, Dr. Charles Sanislow, who prepared a social history of Schad repeating the family background, and could not rule out the possibility that Schad’s history of abuse, neglect, and abandonment played a significant factor in his psychiatric and behavioral functioning as an adult.

. 28 U.S.C. § 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

. Habeas Rule 7 provides, in relevant part: "if the petition is not dismissed, the [habeas court] may direct the parties to expand the record by submitting additional materials relating to the petition.”

. Cooper-Smith indicates that the standard of review is an open question, 397 F.3d at 1241 n. 12, but regardless of whether it is de novo or for abuse of discretion, the district court properly denied Schad’s request for an evidentiary hearing and to expand the record because he did not exercise diligence in his efforts to develop the factual basis of his claims in state court.

. Petitioner's Brief Pursuant to Court’s May 8, 2000 Order and Motion for Evidentiary Hearing (filed October 23, 2000). After summarizing the newly developed information, Schad argues that he was prejudiced by sentencing counsel's failure to investigate and discover this evidence, stating: "First, readily available mitigating evidence was not presented due to defense counsel’s lack of investigation,” Id. at 88. Prefacing his summary of the newly discovered evidence, Schad says: "Had counsel only looked, however, he would have found this.” Id. at 81.
I mention this not to suggest that the facts could have been discovered, but to indicate that the information sought was available at the time. See Williams, 529 U.S. at 435, 120 S.Ct. 1479.

. See Petitioner’s Reply to Respondents’ Brief on the Merits (filed June 12, 2001), at 70 (discussing reasonableness of Mrs. Schad’s reluctance to talk over the phone with someone assisting her son for the first time in fifteen years).

. So far as I can tell, the only requests that were denied were for a contact visit with Schad, though post-conviction counsel interviewed him twice; for certain prison records; and for more time after the thirty-fourth extension had expired.

. The district court found with respect to the submissions in support of an evidentiary hearing that “[a] reasonable attorney, provided with the time and funding to which post-conviction counsel had access, would have presented affidavits and records in support of the argument that Schad's traumatic family background was not adequately explored by trial counsel.” 454 F.Supp.2d at 956. Schad offers no evidence to the contrary. It is manifest from the record that this is so. See Holland, 542 U.S. at 652, 124 S.Ct. 2736 (stating that "attorney negligence ... is chargeable to the client and precludes relief unless the conditions of § 2254(e)(2) are satisfied”).

. In her 1999 affidavit filed in federal court, Schad’s mother avers that she "would have *1045 done anything to help Ed," including going from New York to Arizona to tell the judge all the things she says in her affidavit.

. To the extent this discussion is intended as a bridge to the merits of Schad's ineffective assistance claim, it is way off the Strickland mark. The Strickland question is whether there is "a reasonable probability” that absent the errors asserted, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death, 466 U.S. at 695, 104 S.Ct. 2052 — not, as the majority puts it, whether there is "at least some likelihood” of altering the sentencing court’s evaluation of the aggravating and mitigating factors.

. The district court concluded that trial counsel presented a strategically sound case in mitigation, and that the newly developed information is not of sufficient weight to create a reasonable probability that, if it had been presented, the trial court would have reached a different sentencing determination. 454 F.Supp.2d at 940-44.