Maurice M. PRICE, Appellant

v.

James W. WYNDER; District Attorney of Berks County; Attorney General of PA, Appellee.

No. 08–1659.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 29, 2009.

Filed: Oct. 30, 2009.

Elayne C. Bryn, Esq., Philadelphia, PA, for Appellant.

Alisa R. Hobart, Esq., Office of District Attorney, Reading, PA, for Appellee.

Before: SLOVITER, FUENTES, and HARDIMAN, Circuit Judges.

OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Maurice Price appeals the judgment of the District Court denying his petition for writ of habeas corpus. We will affirm.

## I.

Because we write for the parties, we review only the essential facts.

In 2003, a state court jury convicted Price of several offenses arising from the beatings and robbery of Chris Marcano and his father. The Marcanos were attacked near their restaurant in Reading, Pennsylvania by four men, two of whom attempted to drag Chris into a waiting vehicle before making off with a bag containing checks and currency. At trial, Chris identified two of the assailants as Price and Paul Simmons. In addition, an informant named Kevin Martin testified that Price confessed to the crime while in jail. Contrary to the testimony of Chris Marcano and Kevin Martin, Simmons and another witness testified that Price was not present when the beatings and robbery occurred.

Price was represented at trial by Richard Harris. After Price was convicted, Harris committed a procedural default by failing to file a timely Concise Statement of Matters Complained of on Appeal as required by Pennsylvania Rule of Appellate Procedure 1925(b). Accordingly, the Pennsylvania Superior Court affirmed Price's conviction.

Price filed a *pro se* habeas petition pursuant to Pennsylvania's Post–Conviction Relief Act, 42 Pa.C.S. § 9451, *et seq.* Attorney Rebecca Bell was subsequently appointed to represent Price in his state habeas proceedings and filed an amended petition alleging six grounds of ineffective assistance by Price's trial counsel (Harris). The PCRA court held a hearing at which Price, Harris, and Terica Martin—a potential alibi witness whom Harris elected not to call at trial—testified.[1] The PCRA court rejected Price's ineffective assistance claims and dismissed his petition. Price appealed to the Superior Court, adding two new grounds of ineffective assistance of appellate counsel, but was unsuccessful.

Price next filed a *pro se* habeas petition in federal court, in which he alleged eight grounds of ineffective assistance of trial and appellate counsel. In February 2008, five years after Price was convicted, the District Court adopted a Magistrate Judge's Report and Recommendation that Price's habeas petition should be denied. Price appealed and we granted a certificate of appealability on the following two issues: whether trial counsel was ineffective for (1) failing to call potential alibi witness Terica Martin, or (2) failing to object to the inculpatory testimony of jailhouse informant Kevin Martin.[2]

## II.

Price's appeal is governed by the deferential standards of the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

> Under AEDPA, "a state prisoner's habeas petition must be denied as to any claim that was 'adjudicated on the merits in State court proceedings' unless the adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "

*Abu–Jamal v. Horn,* 520 F.3d 272, 278–79 (3d Cir.2008) (quoting 28 U.S.C.

---

1. Terica Martin is unrelated to the jailhouse informant, Kevin Martin.

2. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 2254(a) and we have appellate jurisdiction pursuant to 28 U.S.C. § 2253.

§§ 2254(d)(1) and (2)). "Under the 'unreasonable application' prong of § 2254(d)(1), 'the question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007)). Accordingly, we are "not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Werts v. Vaughn,* 228 F.3d 178, 197 (3d Cir.2000). We may grant habeas relief to a state prisoner only if "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 890 (3d Cir.1999)).

Price argues that the PCRA court's ruling constitutes an unreasonable application of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny. To establish that he has been denied effective assistance of counsel, Price must show that Harris "made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. Price faces an uphill battle because "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. As the Supreme Court explained in *Strickland:*

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (internal citation and quotation omitted).

The question in this appeal is whether the acts or omissions identified by Price "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. 2052. Our concern is not whether counsel *should have* followed a particular course of action suggested in hindsight, but "whether the investigation supporting counsel's decision ... *was itself reasonable.*" *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (emphasis in original). "Reasonableness in this context is assessed by looking to '[p]revailing norms of practice as reflected in [the] American Bar Association standards,'" *Outten v. Kearney,* 464 F.3d 401, 417 (3d Cir.2006) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052), "applying a heavy measure of deference to counsel's judgments," *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

Moreover, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.*

### A.

With the aforementioned standards in mind, we first consider Harris's decision not to call Terica Martin—the mother of Price's children and his girlfriend at the time—as an alibi witness. Harris told the PCRA court that Terica was willing to testify that Price was at home with her when the Marcanos were attacked. However, "[a]fter meeting with Miss Martin, [Harris] determined that . . . the alibi information she would have provided was not reliable." App. 290. Harris explained that Price's defense was that he did not participate in the crime, not that he was not present at the scene, and that in light of Terica's lack of credibility "there wasn't any sufficient or corroborative evidence of where [Price] was, what he was doing, and who he was doing it with." App. 291. According to Harris, his typical practice was not to "call alibi witnesses unless they have something corroborative, meaning something independent to demonstrate that they were with that person, and [Price] had nothing" to corroborate Terica's alibi.App. 144. "It wasn't my trial strategy," Harris testified, "to put on a witness . . . that I thought was not reliable and [who] wouldn't have helped [Price's] case." *Id.*

The PCRA court found that Harris was not ineffective for failing to call Terica because his "testimony [was] credible in that his decision . . . was part of a valid trial strategy." App. 144. The District Court found "no basis for a finding that the state court's analysis was an unreasonable application of federal law and . . . agree[d] . . . that *Strickland* compels a finding that counsel's decision did not rise to the level of ineffective assistance." App. 5.

The essence of Price's argument on this issue is as follows:

> The factual findings of the state court and the District Court were wrong. Terica Martin's alibi testimony would have corroborated the trial testimony of two eyewitnesses who testified that the appellant was not present when the assault took place. This is clear and convincing evidence that the factual findings of both state trial and appellate courts are incorrect pursuant to 28 U.S.C. § 2254(e)(1).

Price Br. 32–33.

Price does not explain which factual findings were wrong. To the extent he claims that the state court erred in holding that Terica Martin's testimony would have been unhelpful, Price has failed to identify the proper factual finding. The state court found, as a matter of fact, that Harris testified credibly that his decision not to call Terica Martin was part of a valid trial strategy. We agree with the District Court that this was not "an unreasonable determination of the facts in light of the evidence presented" under AEDPA's deferential standard of review. § 2254(d)(2).

With respect to the PCRA court's application of federal law, *Strickland* mandates deference to tactical decisions made by trial attorneys and AEDPA mandates deference to state court decisions interpreting *Strickland.* It was reasonable for the PCRA court to conclude that *Strickland* affords counsel discretion to make adverse credibility determinations about potential witnesses notwithstanding the fact that their testimony might be helpful in certain respects. Price cites no "clearly established" Supreme Court precedent (or any precedent for that matter) to suggest otherwise.

### B.

We next turn to Harris's failure to object to Kevin Martin's testimony that, while incarcerated awaiting trial, Price confessed to "pistol whipp[ing] Chris Marcano and his pop." App. 203. Kevin Martin also testified that Price's co-Defendant Simmons told him the incident "was supposed to be simply a robbery, just turned out to be more than what it was supposed to be." *Id.* On cross-examination Harris attacked Kevin Martin's credibility by emphasizing his criminal record and suggesting that his testimony was motivated by the promise of a lenient sentence. App. 204–05.

Price claims that "counsel's failure to investigate a witness who was a career criminal convicted of federal offenses and awaiting sentence did not meet standards of 'reasonable professional judgment.'" Price Br. at 38. This provides little guidance, but given several passing references to Kevin Martin as a "jailhouse informant" and to Harris's "failure to object" to his testimony, we construe Price's argument to be that Kevin Martin's testimony was excludable because he was acting as a Government agent in violation of Price's Sixth Amendment right to counsel. *See Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).[3]

The reasonableness of Harris's decision not to seek to exclude Kevin Martin's testimony turns on what Harris knew at the time. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The record is somewhat ambiguous on this point. At the PCRA hearing, Price testified that his only contact with Kevin Martin was in November 2002 when Martin approached Price in jail claiming that he was sent by a United States Attorney. Price produced a letter dated November 7 in which he informed Harris that he had been solicited for information about his case by a federal informant. The letter did not identify Kevin Martin by name, however. Price further testified that Harris told him shortly before trial in January 2003 that Kevin Martin's name was on the witness list, and that Price responded: "That's the same guy that I wrote you and told you about." App. 273.

Harris testified that he did not remember receiving the November 7 letter, but that at some point before the trial Price informed him Kevin Martin was cooperating with the Government. However, Harris claims he had no reason to suspect that Kevin Martin was acting on Government orders to elicit information from Price in a manner circumventing Price's right to counsel. In fact, Kevin Martin's trial testimony seems to suggest that he was solicited by the Government only *after* Price's purported confession. *See* App. 206 Even more significantly, Harris testified that when he informed Price shortly before trial that Kevin was on the Commonwealth's witness list, Price responded that "he hadn't spoken to [Kevin] and that anything that [Kevin] would have been saying as it relates to his testimony would have been a lie." App. 286.

Harris explained that he did not file a motion to suppress Kevin's testimony because he "didn't have enough information

---

**3.** "[T]he Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Moulton,* 474 U.S. at 176, 106 S.Ct. 477.

Although Price does not mention *Moulton, Massiah,* or the Sixth Amendment on appeal, the PCRA court analyzed Price's claim under this framework and it is the only plausible basis we can surmise for suppressing Kevin Martin's testimony.

to deem that motion to be appropriate." App. 288. Specifically, "the Commonwealth had not provided [Harris] with information regarding [Kevin] being a federal informant." *Id.* "If the Commonwealth had [such] information, certainly that would have been information under *Brady* that should have been turned over." App. 289. "If they had that information in their possession," Harris told the PCRA court, "I would presume they would have turned [it] over." *Id.* Furthermore, Harris "had a discussion with the prosecutor ... and he did not inform me that ... [Kevin] was ... what the law would consider a federal informant [under *Massiah* ]." *Id.*

The PCRA court found that "Harris's failure to file any motions [was] part of a valid trial strategy." App. 151. Although the decision whether or not to file a motion to suppress evidence may be strategic in some cases, the question here is whether Harris's decision in this regard was made following reasonable investigation. 466 U.S. at 690–91, 104 S.Ct. 2052. *See also Wiggins,* 539 U.S. at 523, 123 S.Ct. 2527.

■ We first note that the record does not clearly indicate what Harris knew or when he knew it. If Harris was informed that Kevin approached Price claiming to be "sent by" prosecutors, "prevailing norms of practice" would dictate a more extensive investigation into a potential *Massiah* violation than if Harris was merely aware that Kevin was cooperating generally with the Government. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Because the testimony adduced at the PCRA hearing was equivocal on this point, we cannot say that it was unreasonable under § 2254(d)(2) for the PCRA court to conclude that Harris had no firm basis to believe a *Massiah* violation had occurred. Therefore, the District Court properly rejected Price's ineffective assistance claim with respect to Kevin Martin's testimony.

For the foregoing reasons we will affirm the judgment of the District Court.