# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2011

No. 10-70028

Lyle W. Cayce
Clerk

DONALD KEITH NEWBURY,

Petitioner–Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-1410

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner Donald Keith Newbury, convicted of capital murder and sentenced to death in Texas state court, requests a Certificate of Appealability (COA) so he may appeal the district court's denial of his petition for a writ of habeas corpus. We DENY his COA request because Newbury has not made a substantial showing of the denial of a constitutional right or otherwise met the qualifications for his application.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-70028

I

A Texas jury convicted Newbury of capital murder and sentenced him to death for his role in the shooting death of a City of Irving police officer. The evidence presented at trial showed that Newbury and several fellow prison inmates escaped from prison and committed a series of armed robberies.[1] When the group robbed a sporting goods store in Irving, a police officer encountered them. As the group fled the crime scene, group members shot and killed the officer. After the shooting, Newbury and others in the group escaped to Colorado where law enforcement eventually arrested them.

Newbury appealed his conviction and death sentence to the Texas Court of Criminal Appeals, which affirmed the jury's conviction and death sentence. *Newbury v. State*, 135 S.W.3d 22 (Tex. Crim. App. 2004). Newbury filed a state application for a writ of habeas corpus, which the Texas Court of Criminal Appeals denied when that court adopted the trial judge's findings and conclusions. *Ex Parte Newbury*, No. WR-63822-01, 2006 WL 1545492 (Tex. Crim. App. June 7, 2006). Newbury then filed a federal writ of habeas corpus, which challenged his conviction and death sentence on four grounds. Before the district court, Newbury argued that: 1) his counsel was constitutionally ineffective because counsel failed to conduct an adequate investigation into his background for mitigating evidence; 2) he was denied his constitutional rights to effective assistance of counsel and due process because the trial court had failed to strike two jury members who were exposed to pre-trial publicity; 3) the Texas death penalty scheme, which does not require the State to prove the absence of mitigating circumstances beyond a reasonable doubt, violated his constitutional rights; and, 4) the Texas death penalty scheme violated his constitutional rights because the State presented jury instructions that

---

[1] The group of escaped prisoners was referred to as the Texas Seven.

2

No. 10-70028

discussed Newbury's future dangerousness through vague and undefined terms. The district court denied Newbury's petition and his application for a COA. Newbury now requests a COA from this court.

II

Because Newbury filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), his petition is governed by the procedures and standards provided therein. *See Parr v. Quarterman*, 472 F.3d 245, 251–52 (5th Cir. 2006). AEDPA requires a petitioner to obtain a COA to appeal a district court's denial of habeas relief. 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (internal citations and quotations omitted). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." *Johnson v. Quarterman*, 483 F.3d 278, 285 (5th Cir. 2007) (citing *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005)).

No. 10-70028

Because the district court reviewed the factual findings and legal conclusions of a state court, the district court evaluated Newbury's claims under AEDPA's deferential framework.  A federal court cannot grant habeas relief on any claim adjudicated on the merits by a state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting 28 U.S.C.§ 2254(d)(1) and (2)).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404–08 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is "objectively unreasonable." *Id.* at 409; *see also Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).  Under § 2254(e)(1), the state court's findings of fact are presumed to be correct unless rebutted by clear and convincing evidence. *Wood v. Allen*, 130 S. Ct. 841, 845 (2010).

## III

Newbury requests a COA on four issues: 1) whether his trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence during the punishment phase of trial; 2) whether the district court erred by concluding that Newbury was not denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights when the trial court denied Newbury's challenge for cause to strike two prospective jurors; 3) whether the Texas sentencing scheme unconstitutionally places the burden of proof for mitigation on the criminal defendant; and, 4) whether the Texas death

No. 10-70028

penalty scheme, which permits for a discussion of a defendant's future dangerousness in jury instructions, violated Newbury's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments.

A

Newbury contends that his trial counsel rendered ineffective assistance by failing to investigate and present certain mitigating evidence during the punishment phase of trial. In Newbury's state habeas appeal, the state court found that trial counsel's performance did not violate Newbury's Sixth Amendment rights. In his federal habeas petition, the district court concluded that a significant portion of Newbury's federal claim on this matter exceeded the scope of his claim at the state-court level. Thus, the district court determined it was procedurally barred from considering the new allegations. The district court also concluded that Newbury had failed to present clear and convincing evidence that controverted the state court's finding about his counsel's performance.

To prevail on the merits of his claims in state court, Newbury had to establish that counsel was ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Newbury had to show that the state court determinations–that counsel's performance was not deficient and that this representation had not prejudiced Newbury–were unreasonable. *Id.* at 687. Courts give deference to strategic decisions made by counsel, applying the strong presumption that counsel's performance "falls within the wide range of reasonable professional assistance." *Id.* at 689. In doing so, a court evaluates trial counsel's conduct from counsel's perspective at the time of trial, endeavoring to "eliminate the distorting effects of hindsight." *Id.* To overcome the strong presumption that counsel acted reasonably, Newbury had to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

No. 10-70028

"Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Ultimately, the prejudice inquiry of *Strickland* focuses on whether counsel's deficient performance "renders the result of the trial unreliable or fundamentally unfair." *Williams*, 529 U.S. at 393 n.17. Unless Newbury made both showings under *Strickland*—deficient performance and prejudice—the district court could not conclude that his conviction or death sentence "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. When a petitioner argues that his attorney failed to adequately investigate mitigation evidence, the proper inquiry is "not whether counsel should have presented a mitigation case, . . . [but] whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was *itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

The second prong of *Strickland* requires a petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Inherent within the prejudice requirement is an element of causation. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. When deciding prejudice in the context of capital sentencing, the court must "weigh the quality and quantity of the available mitigating evidence, including that presented in post-conviction proceedings, along with . . . any aggravating evidence." *Blanton v. Quarterman,* 543 F.3d 230, 236 (5th Cir. 2008). The question is then "whether the changes to the mitigation case would have a reasonable probability of causing a juror to change his or her mind about imposing the death penalty." *Id.*

No. 10-70028

In his state petition for habeas corpus, Newbury argued that his trial counsel rendered ineffective assistance by failing to uncover and introduce elementary school records, medical records from his childhood physician, and counseling records from 1974. In his federal habeas petition, Newbury argued that his trial counsel had failed to investigate Newbury's background "for mitigation evidence, including but not limited to educational records, medical records and social history." Newbury concedes that the ineffective assistance of counsel claim contained in his federal habeas petition is largely unexhausted because it exceeds the scope of the claim presented in his state habeas petition. Because of this, the district court concluded that Newbury's new claims were procedurally barred and that our precedent prevented consideration of these new arguments.[2] *See Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004); *Haynes v. Quarterman*, 526 F.3d 189, 194–95 (5th Cir. 2008), *rev'd on other grounds*, *Thaler v. Haynes*, 130 S. Ct. 1171 (2010). A reasonable jurist would not disagree with the district court's conclusion and as such, we deny Newbury a COA on the ineffective assistance of counsel claims raised only in his federal habeas petition.[3]

At trial, Newbury's counsel introduced evidence about his childhood struggles at school and home with testimony from Newbury's sister and father, the only surviving adult members of the family in which Newbury was raised.

---

[2] Although the district court concluded that Newbury's new arguments were procedurally barred, that court proceeded to analyze the new assertions. Ultimately, the district court concluded that Newbury's expanded ineffective assistance of counsel claim lacked merit. We do not need to address the district court's analysis because Newbury's new claims, supported by new factual evidence, are procedurally barred. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

[3] Newbury also contends that his state habeas counsel was ineffective because counsel failed to present the expanded claim contained in his federal petition. Newbury argues this purported ineffectiveness should constitute cause and overcome the procedural default. The district court noted, and as Newbury has conceded, we have repeatedly rejected this argument. *See Williams v. Thaler*, 602 F.3d 291, 308–09 (5th Cir. 2010); *Matchett*, 380 F.3d at 849 & n.1.

No. 10-70028

Newbury's sister testified about her brother's tumultuous upbringing, his abusive grandmother, his childhood learning disabilities, and how Newbury dropped out of school when he was sixteen. Before the state habeas court, Newbury argued that in addition to the testimony and evidence presented at trial, counsel should have also investigated: 1) his childhood medical records from Dr. William Legg; 2) school records reflecting Newbury's performance between kindergarten and third grade; and, 3) Newbury's 1974 counseling records from a mental health center in North Kansas City, Missouri. Newbury argued that the records would have shown that he had suffered from learning problems, low self-esteem, a medical condition that made him sensitive to weather changes, a tendency to burst blood vessels during times of emotional stress, and difficulties with his father. Newbury also asserts that if trial counsel had discovered and introduced these records during trial, the jury would have found sufficient mitigating circumstances existed to warrant a life imprisonment sentence instead of death. Newbury compared his trial counsel's failure to obtain these records to three cases in which the Supreme Court held that defense counsel had unreasonably failed to investigate and present potentially mitigating evidence during capital trials. *See Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

In *Williams*, the Court determined that trial counsel's failure to present mitigating evidence could not be justified as a strategic choice, because the attorneys "did not fulfill their obligation to conduct a thorough investigation of the defendant's background." 529 U.S. at 396. Counsel in that case failed to obtain records chronicling Williams's "nightmarish childhood" because counsel incorrectly believed that state law barred access to the records. *Id.* at 395. Counsel also failed to seek prison records or obtain the testimony of prison officials who described Williams as "least likely to act in a violent, dangerous or

8

provocative way." *Id.* at 396. In *Wiggins*, the Court determined that trial counsel conducted an unreasonably limited investigation before deciding not to present a mitigation case. 539 U.S. at 523–24. In that case, counsel consulted three sources: a one-page pre-sentence investigation report prepared by the parole and probation office, city social services records, and a psychologist who conducted a number of tests on the petitioner, none of which revealed information about Wiggins's life history. *Id.* Because of this limited investigation, counsel failed to uncover "evidence of severe physical and sexual abuse." *Id.* at 516. In *Rompilla*, the Court held that even when the defendant and his family members suggest no mitigating evidence is available, his lawyer is bound to obtain and review material that counsel knows the prosecution plans to rely on at sentencing. 545 U.S. 374, 377. The Court found prejudice because a review of Rompilla's conviction file, "would have destroyed the benign conception of Rompilla's upbringing and mental capacity . . . formed from talking with Rompilla himself and some of his family members" and alerted counsel that further investigation was necessary. *Id.* at 391.

In Newbury's case, the district court concluded that trial counsel did not perform ineffectively by failing to obtain records from Dr. Legg because the records were destroyed when Dr. Legg retired in 1999. The district court concluded that counsel's failure to obtain the elementary school and counseling records did not demonstrate a failure to spend sufficient time investigating Newbury's case. Furthermore, Newbury's assertions do not demonstrate that his counsel had blatantly ignored glaringly obvious leads or evidence. The district court determined that this made Newbury's counsel unlike the constitutionally ineffective attorneys in *Williams, Wiggins,* and *Rompilla.*

We agree with the district court's assessment of counsel's performance. Newbury's trial counsel presented a noteworthy mitigation case during the punishment phase of trial. The mitigation evidence demonstrated, among other

things, that: 1) Newbury's father and mother were unsupportive of him and, at times, abusive; 2) Newbury's grandmother, who had an active role in Newbury's life, was abusive toward him; 3) Newbury had difficulty in school and dropped out at age sixteen; 4) Newbury suffered from hyperactivity as a young child; and, 5) Newbury had close relationships with his sister, her children, his step-children, and his wife. Based on the record, it appears that Newbury's trial counsel examined and presented to jurors Newbury's family struggles, difficulties in school, medical conditions, and educational background. Counsel presented this information in an effort to present a sympathetic portrait of Newbury. Thus, Newbury did not demonstrate how his counsel's performance is akin to the ineffective and damaging performance by counsel in *Wiggins*, *Williams,* or *Rompilla*.[4]

Furthermore, Newbury failed to demonstrate he was prejudiced by his counsel's performance because the State presented a strong, if not overwhelming, case about Newbury's future dangerousness.[5] At trial, the State showed that Newbury had three aggravated robbery convictions, the last of which resulted in the 99-year prison sentence that he was serving when he escaped from prison. As a fugitive, Newbury had a primary role in the three robberies committed by the Texas Seven, which occurred prior to the killing of

---

[4] Newbury's petition before the district court argued that his trial counsel was ineffective for failing to discover and present mitigating evidence contained in an affidavit by a social worker as well as by failing to hire an expert who could recognize Newbury's "various emotional and psychological problems." The district court's opinion noted that Newbury had not raised these claims before the state court. We will not consider these claims because they were not raised before the state court and our review of Newbury's petition under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S. Ct. at 1398.

[5] Under Texas law, a defendant is eligible for the death penalty only if the jury unanimously finds that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(1).

the police officer. When police captured Newbury a month after the homicide, he stated the officer's death was due to poor police training. Prior to his escape from prison with the Texas Seven, Newbury had previously made an unsuccessful attempt to escape from prison and he had accrued a total of fifteen disciplinary reports in prison. This evidence clearly demonstrated Newbury's propensity for violence. Newbury has failed to demonstrate that, but for counsel's failure to proffer additional evidence from school and medical records, the outcome of the trial would have differed. Reasonable jurists would not debate the district court's rejection of this claim.

B

Newbury also seeks a COA to appeal the district court's failure to strike two venire members that Newbury alleges were subject to removal because of their exposure to pre-trial publicity. Both jurors stated that due to pre-trial media reports, they knew about the facts of the homicide and the eventual arrest of the Texas Seven. And, the individuals affirmed that they had not formed an opinion regarding Newbury's guilt and that they could presume Newbury innocent until they had heard all of the evidence. Newbury's trial counsel moved to strike the two potential jurors for cause, but counsel did not use a peremptory challenge. The trial court denied Newbury's motion and the two individuals served as jurors.

The Sixth and Fourteenth Amendments "guarantee a defendant on trial for his life the right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). A potential juror may be removed for cause if the individual's views prevent or "substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted). Exposure to media coverage of the crime, however, does not automatically render a potential juror unqualified. *Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). Rather, once a

potential juror acknowledges such exposure, the issue "becomes whether exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law as stated to the evidence presented." *Bell v. Lynaugh*, 828 F.2d 1085, 1093 (5th Cir. 1987); *see also United States v. Webster*,  162 F.3d 308, 344 (5th Cir. 1998).  Because a trial court's determination as to a potential juror's bias is a factual determination to which the district court pays special deference, a petitioner must rebut the presumption of correctness afforded to the finding with clear and convincing evidence.  § 2254(e)(1); *Patton v. Yount*, 467 U.S. 1025, 1036–38 & n.12.

In his state and federal habeas petitions, Newbury failed to rely on case law when arguing that the trial court's failure to strike two jurors for cause violated his Sixth Amendment rights.  Newbury conceded before the district court that his petition did not provide an argument or case law to support the Sixth Amendment claim.  The district court concluded that Newbury waived the claim because he had failed to properly preserve this issue.  We have previously held that a claim is waived when a petitioner inadequately briefs the issue.  *See Trevino v. Johnson,* 168 F.3d 173, 181 n.3 (5th Cir. 1999)*; Pyles v. Johnson*, 136 F.3d 986, 996 n.9 (5th Cir. 1998).  On appeal, Newbury acknowledges the district court's conclusion and, again, fails to support this claim with case law.  Newbury has waived this claim due to the inadequate briefing of the issue.  *Trevino*, 168 F.3d at 181 n.3.  Thus Newbury, has failed to show that reasonable jurists would debate the district court's rejection of this claim.

Newbury also alleges that the trial court's refusal to strike the two potential jurors violated his Fourteenth Amendment right to due process.  But, as the district court concluded, nothing in the record indicates that either juror could not impartially judge Newbury's guilt.  Both of the contested jurors stated that they could put aside what they had learned from media coverage and could unequivocally afford Newbury the presumption of innocence.  The district court

concluded that the record supported the trial court's conclusions that these individuals were unbiased and truthful. Because Newbury failed to rebut the presumption of correctness afforded to the trial court's factual finding, the district court concluded that the state court had not violated Newbury's due process rights. The record supports the district court's conclusion and reasonable jurists could not debate this finding. Therefore, we DENY Newbury's request for a COA on this claim.[6]

C

Newbury argues that we should grant his request for a COA because the Texas death penalty scheme, which does not require the prosecution to prove the absence of sufficient mitigating circumstances beyond a reasonable doubt, violates his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Specifically, Newbury argues that under *Ring v. Arizona*, 536 U.S. 584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the State should bear the burden of proving beyond a reasonable doubt that there were not sufficient mitigating circumstances to warrant the imposition of a life sentence rather than a death sentence. The district court correctly concluded that this claim was foreclosed by our precedent. *See Ortiz v. Quarterman,* 504 F.3d 492, 505 (5th Cir. 2007); *Granados v. Quarterman*, 455 F.3d 529, 536–37 (5th Cir. 2006). Furthermore, Newbury concedes that we have previously considered and rejected this issue on several occasions. Thus, the district court's denial of this claim is not debatable among reasonable jurists.

D

In his final claim, Newbury alleges that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated because the Texas death penalty scheme permits for jury instructions that contain vague and undefined terms.

---

[6] While we do not address the question of whether the district court erred by concluding that Newbury properly preserved this claim, the State preserved its argument on this issue.

No. 10-70028

Specifically, Newbury contests the instruction that required jurors to answer whether they had found "beyond a reasonable doubt that there [was] a probability that the defendant, Donald Keith Newbury, would commit criminal acts of violence that would constitute a continuing threat to society." Newbury argues that the terms "probability," "criminal acts of violence," and "continuing threat to society" were vague and undefined. The district court properly concluded that we have consistently held that these terms are not unconstitutionally vague and that their meanings may be readily understood. *See Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005); *Turner v. Quarterman*, 481 F.3d 292, 299–300 (5th Cir. 2007). In his petition before the district court and the present appeal, Newbury also concedes that we have rejected similar challenges and states that he raised this issue to preserve it for further review. The district court's denial of the claim is not debatable.

IV

Newbury has not made a substantial showing that his constitutional rights were denied. We therefore DENY his request for a COA.