Justice Thomas
delivered the opinion of the Court.
In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U. S. C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court. Here, the District Court determined that respondent could not make out a colorable claim of ineffective assistance of counsel and therefore was not entitled to an evidentiary hearing. It did so after reviewing the state-court record and expanding the record to *469 include additional evidence offered by respondent. The Court of Appeals held that the District Court abused its discretion in refusing to grant the hearing. We hold that it did not.
I
Respondent Jeffrey Landrigan was convicted in Oklahoma of second-degree murder in 1982. In 1986, while in custody for that murder, Landrigan repeatedly stabbed another inmate and was subsequently convicted of assault and battery with a deadly weapon. Three years later, Landrigan escaped from prison and murdered Chester Dean Dyer in Arizona.
An Arizona jury found Landrigan guilty of theft, second-degree burglary, and felony murder for having caused the victim’s death in the course of a burglary. At sentencing, Landrigan’s counsel attempted to present the testimony of Landrigan’s ex-wife and birth mother as mitigating evidence. But at Landrigan’s request, both women refused to testify. When the trial judge asked why the witnesses refused, Landrigan’s counsel responded that “it’s at my client’s wishes.” App. to Pet. for Cert. D-3. Counsel explained that he had “advised [Landrigan] very strongly that I think it’s very much against his interests to take that particular position.” Ibid. The court then questioned Landrigan:
“THE COURT: Mr. Landrigan, have you instructed your lawyer that you do not wish for him to bring any mitigating circumstances to my attention?
“THE DEFENDANT: Yeah.
“THE COURT: Do you know what that means?
“THE DEFENDANT: Yeah.
“THE COURT: Mr. Landrigan, are there mitigating circumstances I should be aware of?
“THE DEFENDANT: Not as far as I’m concerned.” Id., at D-3 to D-4.
*470 Still not satisfied, the trial judge directly asked the witnesses to testify. Both refused. The judge then asked counsel to make a proffer of the witnesses’ testimony. Counsel attempted to explain that the witnesses would testify that Landrigan’s birth mother used drugs and alcohol (including while she was pregnant with Landrigan), that Landrigan abused drugs and alcohol, and that Landrigan had been a good father.
But Landrigan would have none of it. When counsel tried to explain that Landrigan had worked in a legitimate job to provide for his family, Landrigan interrupted and stated, “If I wanted this to be heard, I’d have my wife say it.” Id., at D-6. Landrigan then explained that he was not only working but also “doing robberies supporting my family.” Id., at D-7. When counsel characterized Landrigan’s first murder as having elements of self-defense, Landrigan interrupted and clarified: “He didn’t grab me. I stabbed him.” Id., at D-9. Responding to counsel’s statement implying that the prison stabbing involved self-defense because the assaulted inmate knew Landrigan’s first murder victim, Landrigan interrupted to clarify that the inmate was not acquainted with his first victim, but just “a guy I got in an argument with. I stabbed him 14 times. It was lucky he lived.” Ibid.
At the conclusion of the sentencing hearing, the judge asked Landrigan if he had anything to say. Landrigan made a brief statement that concluded, “I think if you want to give me the death penalty, just bring it right on. I’m ready for it.” Id., at D-16.
The trial judge found two statutory aggravating circumstances: that Landrigan murdered Dyer in expectation of pecuniary gain and that Landrigan was previously convicted of two felonies involving the use or threat of violence on another person. Id., at D-23. In addition, the judge found two nonstatutory mitigating circumstances: that Landrigan’s family loved him and an absence of premeditation. Ibid. *471 Finally, the trial judge stated that she considered Landrigan “a person who has no scruples and no regard for human life and human beings.” Ibid. Based on these findings, the court sentenced Landrigan to death. On direct appeal, the Arizona Supreme Court unanimously affirmed Landrigan’s sentence and conviction. In addressing an ineffective-assistance-of-counsel claim not relevant here, the court noted that Landrigan had stated his “desire not to have mitigating evidence presented in his behalf.” State v. Landrigan, 176 Ariz. 1, 8, 859 P. 2d 111, 118 (1993).
On January 31, 1995, Landrigan filed a petition for state postconviction relief and alleged his counsel’s “fail[ure] to explore additional grounds for arguing mitigation evidence.” App. to Pet. for Cert. F-3 (internal quotation marks omitted). Specifically, Landrigan maintained that his counsel should have investigated the “biological component” of his violent behavior by interviewing his biological father and other relatives. Id., at E-2. In addition, Landrigan stated that his biological father could confirm that his biological mother used drugs and alcohol while pregnant with Landrigan. Ibid.
The Arizona postconviction court, presided over by the same judge who tried and sentenced Landrigan, rejected Landrigan’s claim. The court found that “[Landrigan] instructed his attorney not to present any evidence at the sentencing hearing, [so] it is difficult to comprehend how [Landrigan] can claim counsel should have presented other evidence at sentencing.” Id., at F-4. Noting Landrigan’s contention that he “ ‘would have cooperated’ ” had other mitigating evidence been presented, the court concluded that Landrigan’s “statements at sentencing belie his new-found sense of cooperation.” Ibid. Describing Landrigan’s claim as “frivolous,” id., at F-5, the court declined to hold an evidentiary hearing and dismissed Landrigan’s petition. The Arizona Supreme Court denied Landrigan’s petition for review on June 19, 1996.
*472 Landrigan then filed a federal habeas application under §2254. The District Court determined, after “expand[ing] the record to include . . . evidence of [Landrigan’s] troubled background, his history of drug and alcohol abuse, and his family’s history of criminal behavior,” id., at C-22, that Landrigan could not demonstrate that he was prejudiced by any error his counsel may have made. Because Landrigan could not make out even a “colorable” ineffective-assistance-of-counsel claim, id., at C-46, the District Court refused to grant him an evidentiary hearing.
On appeal, a unanimous panel of the Court of Appeals for the Ninth Circuit affirmed, but the full court granted rehearing en banc, Landrigan v. Stewart, 397 F. 3d 1235 (2005), and reversed. The en banc Court of Appeals held that Landrigan was entitled to an evidentiary hearing because he raised a “colorable claim” that his counsel’s performance fell below the standard required by Strickland v. Washington, 466 U. S. 668 (1984). 441 F. 3d 638, 650 (2006). With respect to counsel’s performance, the Ninth Circuit found that he “did little to prepare for the sentencing aspect of the case,” id., at 643, and that investigation would have revealed a wealth of mitigating evidence, including the family’s history of drug and alcohol abuse and propensity for violence.
Turning to prejudice, the court held the Arizona post-conviction court’s determination that Landrigan refused to permit his counsel to present any mitigating evidence was “an ‘unreasonable determination of the facts.’” Id., at 647 (quoting 28 U. S. C. § 2254(d)(2)). The Court of Appeals found that when Landrigan stated that he did not want his counsel to present any mitigating evidence, he was clearly referring only to the evidence his attorney was about to introduce — that of his ex-wife and birth mother. 441 F. 3d, at 646. The court further held that, even if Landrigan intended to forgo the presentation of all mitigation evidence, such a “last-minute decision cannot excuse his counsel’s failure to conduct an adequate investigation prior to the sen- *473 tenting.” Id., at 647. In conclusion, the court found “a reasonable probability that, if Landrigan’s allegations are true, the sentencing judge would have reached a different conclusion.” Id., at 650. The court therefore remanded the case for an evidentiary hearing.
We granted certiorari, 548 U. S. 941 (2006), and now reverse.
II
Prior to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts. Brown v. Allen, 344 U. S. 443, 463-464 (1953); see also Townsend v. Sain, 372 U. S. 293, 313 (1963). That basic rule has not changed. See 28 U. S. C. § 2254, Rule 8(a) (“[T]he judge must review the answer [and] any transcripts and records of state-court proceedings ... to determine whether an evidentiary hearing is warranted”).
AEDPA, however, changed the standards for granting federal habeas relief.[1] Under AEDPA, Congress prohibited federal courts from granting habeas relief unless a state court’s adjudication of a claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” § 2254(d)(1), or the relevant state-court decision “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,” § 2254(d)(2). The question under AEDPA is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable — a substantially higher threshold. See Williams v. Taylor, 529 U. S. 362,410 (2000). AEDPA also requires federal habeas courts to presume the *474 correctness of state courts’ factual findings unless applicants rebut this presumption with “clear and convincing evidence.” § 2254(e)(1).
In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. See, e.g., Mayes v. Gibson, 210 F. 3d 1284, 1287 (CA10 2000). Because the deferential standards prescribed by §2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate. See id., at 1287-1288 (“Whether [an applicant’s] allegations, if proven, would entitle him to habeas relief is a question governed by [AEDPA]”).[2]
It follows that if the record refutes the applicant’s factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. The Ninth Circuit has recognized this point in other cases, holding that “an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.” Totten v. Merkle, 137 F. 3d 1172, 1176 (1998) (emphasis deleted) (affirming the denial of an evidentiary hearing where the applicant’s factual allegations “fl[ew] in the face of logic in light of... [the applicant’s] deliberate acts which are easily discernible from the record”). This approach is not unique to the Ninth Circuit. See Anderson v. Attorney General of Kan., 425 F. 3d 853, 858-859 (CA10 2005) (holding that no evidentiary hearing is required if the applicant’s allegations are contravened by the existing record); cf. Clark v. Johnson, 202 F. 3d 760, 767 (CA5 2000) (holding that no hearing is required when the applicant has failed to present clear and *475 convincing evidence to rebut a state court’s factual findings); Campbell v. Vaughn, 209 F. 3d 280, 290 (CA3 2000) (same).
This principle accords with AEDPA’s acknowledged purpose of “reduc[ing] delays in the execution of state and federal criminal sentences.” Woodford v. Garceau, 538 U. S. 202, 206 (2003) (citing Williams v. Taylor, supra, at 386 (opinion of Stevens, J.) (“Congress wished to curb delays, to prevent ‘retrials’ on federal habeas, and to give effect to state convictions to the extent possible under law”)). If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts. With these standards in mind, we turn to the facts of this case.
Ill
For several reasons, the Court of Appeals believed that Landrigan might be entitled to federal habeas relief and that the District Court, therefore, abused its discretion by denying Landrigan an evidentiary hearing. To the contrary, the District Court was well within its discretion to determine that, even with the benefit of an evidentiary hearing, Landrigan could not develop a factual record that would entitle him to habeas relief.
A
The Court of Appeals first addressed the State’s contention that Landrigan instructed his counsel not to offer any mitigating evidence. If Landrigan issued such an instruction, counsel’s failure to investigate further could not have been prejudicial under Strickland. The Court of Appeals rejected the findings of “the Arizona Supreme Court (on direct appeal) and the Arizona Superior Court (on habeas review)” that Landrigan instructed his counsel not to introduce any mitigating evidence. 441 F. 3d, at 646. According to the Ninth Circuit, those findings took Landrigan’s colloquy *476 with the sentencing court out of context in a manner that “amounts to an ‘unreasonable determination of the facts/” Id., at 647 (quoting 28 U. S. C. § 2254(d)(2)).
Upon review of record material and the transcripts from the state courts, we disagree. As a threshold matter, the language of the colloquy plainly indicates that Landrigan informed his counsel not to present any mitigating evidence. When the Arizona trial judge asked Landrigan if he had instructed his lawyer not to present mitigating evidence, Landrigan responded affirmatively. Likewise, when asked if there was any relevant mitigating evidence, Landrigan answered, “Not as far as I’m concerned.” App. to Pet. for Cert. D-4. These statements establish that the Arizona postconviction court’s determination of the facts was reasonable. And it is worth noting, again, that the judge presiding on postconviction review was ideally situated to make this assessment because she is the same judge who sentenced Landrigan and discussed these issues with him.
Notwithstanding the plainness of these statements, the Court of Appeals concluded that they referred to only the specific testimony that counsel planned to offer — that of Landrigan’s ex-wife and birth mother. The Court of Appeals further concluded that Landrigan, due to counsel’s failure to investigate, could not have known about the mitigating evidence he now wants to explore. The record conclusively dispels that interpretation. First, Landrigan’s birth mother would have offered testimony that overlaps with the evidence Landrigan now wants to present. For example, Landrigan wants to present evidence from his biological father that would “confirm [his biological mother’s] alcohol and drug use during her pregnancy.” Id., at E-2. But the record shows that counsel planned to call Landrigan’s birth mother to testify about her “drug us[e] during her pregnancy,” id., at D-10, and the possible effects of such drug use. Second, Landrigan interrupted repeatedly when counsel tried to proffer anything that could have been con *477 sidered mitigating. He even refused to allow his attorney to proffer that he had worked a regular job at one point. Id., at D-6, D-7. This behavior confirms what is plain from the transcript of the colloquy: that Landrigan would have undermined the presentation of any mitigating evidence that his attorney might have uncovered.
On the record before us, the Arizona court’s determination that Landrigan refused to allow the presentation of any mitigating evidence was a reasonable determination of the facts. In this regard, we agree with the initial Court of Appeals panel that reviewed this case:
“In the constellation of refusals to have mitigating evidence presented . . . this case is surely a bright star. No other case could illuminate the state of the client’s mind and the nature of counsel’s dilemma quite as brightly as this one. No flashes of insight could be more fulgurous than those which this record supplies.” Landrigan v. Stewart, 272 F. 3d 1221, 1226 (CA9 2001).
Because the Arizona postconviction court reasonably determined that Landrigan “instructed his attorney not to bring any mitigation to the attention of the [sentencing] court,” App. to Pet. for Cert. F-4, it was not an abuse of discretion for the District Court to conclude that Landrigan could not overcome § 2254(d)(2)’s bar to granting federal habeas relief. The District Court was entitled to conclude that regardless of what information counsel might have uncovered in his investigation, Landrigan would have interrupted and refused to allow his counsel to present any such evidence. Accordingly, the District Court could conclude that because of his established recalcitrance, Landrigan could not demonstrate prejudice under Strickland even if granted an evidentiary hearing.
B
The Court of Appeals offered two alternative reasons for holding that Landrigan’s inability to make a showing of prej *478 udice under Strickland did not bar any potential habeas relief and, thus, an evidentiary hearing.
1
The Court of Appeals held that, even if Landrigan did not want any mitigating evidence presented, the Arizona courts’ determination that Landrigan’s claims were “ ‘frivolous’ and ‘meritless’ was an unreasonable application of United States Supreme Court precedent.” 441 F. 3d, at 647 (citing 28 U. S. C. § 2254(d)(1)). This holding was founded on the belief, derived from Wiggins v. Smith, 539 U. S. 510 (2003), that “Landrigan’s apparently last-minute decision cannot excuse his counsel’s failure to conduct an adequate investigation prior to the sentencing.” 441 F. 3d, at 647.
Neither Wiggins nor Strickland addresses a situation in which a client interferes with counsel’s efforts to present mitigating evidence to a sentencing court. Wiggins, supra, at 523 (“[W]e focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence of Wiggins’ background was itself reasonable” (emphasis added and deleted)). Indeed, we have never addressed a situation like this. In Rompilla v. Beard, 545 U. S. 374, 381 (2005), on which the Court of Appeals also relied, the defendant refused to assist in the development of a mitigation case, but did not inform the court that he did not want mitigating evidence presented. In short, at the time of the Arizona post-conviction court’s decision, it was not objectively unreasonable for that court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish Strickland prejudice based on his counsel’s failure to investigate further possible mitigating evidence.
2
The Court of Appeals also stated that the record does not indicate that Landrigan’s decision not to present mitigating evidence was “informed and knowing,” 441 F. 3d, at 647, and that “[t]he trial court’s dialogue with Landrigan tells us little *479 about his understanding of the consequences of his decision,” ibid. We have never imposed an “informed and knowing” requirement upon a defendant’s decision not to introduce evidence. Cf., e. g., Iowa v. Tovar, 541 U. S. 77, 88 (2004) (explaining that waiver of the right to counsel must be knowing and intelligent). Even assuming, however, that an “informed and knowing” requirement exists in this case, Landrigan cannot benefit from it, for three reasons.
First, Landrigan never presented this claim to the Arizona courts.[3] Rather, he argued that he would have complied had other evidence been offered. Thus, Landrigan failed to develop this claim properly before the Arizona courts, and § 2254(e)(2) therefore barred the District Court from granting an evidentiary hearing on that basis.
Second, in Landrigan’s presence, his counsel told the sentencing court that he had carefully explained to Landrigan the importance of mitigating evidence, “especially concerning the fact that the State is seeking the death penalty.” App. to Pet. for Cert. D-3. Counsel also told the court that he had explained to Landrigan that as counsel, he had a duty to disclose “any and all mitigating factors ... to th[e] [c]ourt for consideration regarding the sentencing.” Ibid. In light of Landrigan’s demonstrated propensity for interjecting himself into the proceedings, it is doubtful that Landrigan would have sat idly by while his counsel lied about having previously discussed these issues with him. And as Landrigan’s counsel conceded at oral argument before this Court, we have never required a specific colloquy to ensure that a defendant knowingly and intelligently refused to present mitigating evidence. Tr. of Oral Arg. 26.
Third, the Court of Appeals overlooked Landrigan’s final statement to the sentencing court: “I think if you want to *480 give me the death penalty, just bring it right on. I’m ready for it.” App. to Pet. for Cert. B-16. It is apparent from this statement that Landrigan clearly understood the consequences of telling the judge that, “as far as [he was] concerned,” there were no mitigating circumstances of which she should be aware. Id., at D-4.
IV
Finally, the Court of Appeals erred in rejecting the District Court’s finding that the poor quality of Landrigan’s alleged mitigating evidence prevented him from making “a colorable claim” of prejudice. Id., at C-46. As summarized by the Court of Appeals, Landrigan wanted to introduce as mitigation evidence
“[that] he was exposed to alcohol and drugs in útero, which may have resulted in cognitive and behavioral deficiencies consistent with fetal alcohol syndrome. He was abandoned by his birth mother and suffered abandonment and attachment issues, as well as other behavioral problems throughout his childhood.
“His adoptive mother was also an alcoholic, and Landrigan’s own alcohol and substance abuse began at an early age. Based on his biological family’s history of violence, Landrigan claims he may also have been genetically predisposed to violence.” 441 F. 3d, at 649.
As explained above, all but the last sentence refer to information that Landrigan’s birth mother and ex-wife could have offered if Landrigan had allowed them to testify. Indeed, the state postconviction court had much of this evidence before it by way of counsel’s proffer. App. to Pet. for Cert. D-21. The District Court could reasonably conclude that any additional evidence would have made no difference in the sentencing.
In sum, the District Court did not abuse its discretion in finding that Landrigan could not establish prejudice based *481 on his counsel’s failure to present the evidence he now wishes to offer. Landrigan’s mitigation evidence was weak, and the postconviction court was well acquainted with Landrigan’s exceedingly violent past and had seen first hand his belligerent behavior. Again, it is difficult to improve upon the initial Court of Appeals panel’s conclusion:
“The prospect was chilling; before he was 30 years of age, Landrigan had murdered one man, repeatedly stabbed another one, escaped from prison, and within two months murdered still another man. As the Arizona Supreme Court so aptly put it when dealing with one of Landrigan’s other claims, ‘[i]n his comments [to the sentencing judge], defendant not only failed to show remorse or offer mitigating evidence, but he flaunted his menacing behavior.’ On this record, assuring the court that genetics made him the way he is could not have been very helpful. There was no prejudice.” 272 F. 3d, at 1229 (citations and footnote omitted).
V
The Court of Appeals erred in holding that the District Court abused its discretion in declining to grant Landrigan an evidentiary hearing. Even assuming the truth of all the facts Landrigan sought to prove at the evidentiary hearing, he still could not be granted federal habeas relief because the state courts’ factual determination that Landrigan would not have allowed counsel to present any mitigating evidence at sentencing is not an unreasonable determination of the facts under § 2254(d)(2), and the mitigating evidence he seeks to introduce would not have changed the result. In such circumstances, a District Court has discretion to deny an evidentiary hearing. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Although not at issue here, AEDPA generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts. 28 U. S. C. § 2254(e)(2).

 Indeed, the Court of Appeals below, recognizing this point, applied § 2254(d)(2) to reject certain of the Arizona court’s factual findings that established a hearing would be futile.

 Landrigan made this argument for the first time in a motion for rehearing from the denial of his postconviction petition. Under Arizona law, a defendant cannot raise new claims in a motion for rehearing. State v. Byers, 126 Ariz. 139, 142, 613 P. 2d 299, 302 (App. 1980), overruled on other grounds, State v. Pope, 130 Ariz. 253, 635 P. 2d 846 (1981).