# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 27, 2014

No. 12-70015

Lyle W. Cayce
Clerk

JORGE VILLANUEVA,

Petitioner–Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:02-CV-4122

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Jorge Villanueva was convicted and sentenced to death for the murder of
Maria Jova Montiel. He requests a certificate of appealability (COA) to appeal
the district court's denial of federal habeas relief. The request is denied in part
and granted in part.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-70015

**I**

In January 1995, Villanueva was charged with capital murder during the course of a burglary and aggravated sexual assault of Montiel in Harris County, Texas. The trial court appointed Allen C. Isbell and Gilbert Villarreal to represent Villanueva, and together, they filed multiple motions on Villanueva's behalf. Three weeks before trial, both attorneys requested permission to withdraw because of false complaints Villanueva had lodged against them with the Texas State Bar. The court granted the withdrawal, appointed Jerry Guerinot and Anthony Osso to represent Villanueva, and continued the trial date to September 1996 in order to give new counsel time to prepare.

Guerinot and Osso filed a motion to adopt all motions filed by prior counsel and filed additional motions in preparation. Less than three weeks prior to trial, Philip M. Campa filed a motion to be substituted as Villanueva's retained trial attorney. Concerned that the trial date was so close, the trial court extensively questioned Villanueva about the change in counsel. This questioning revealed that Campa had never tried a death penalty case. The court also apprised Villanueva that death penalty cases have distinct procedures, that paying for counsel raised the issue of payment for experts, and that the court was unwilling to grant any further continuances. Despite these considerations, Villanueva reiterated his choice to have Campa represent him and the court allowed the substitution of counsel. Thereafter, the State reindicted Villanueva under a new case number, and trial commenced in October 1996. The trial lasted seven days.

The trial record shows that on August 28, 1994, Villanueva was drinking with friends when he told them that he had looked inside Montiel's window and saw "her body on the floor with blood all over." He eventually gave in to his friends' urging to call the police and an anonymous 911 call was made. After the police arrived at Montiel's home, her neighbor told them to investigate the man living across the street, referring to Villanueva, because he had been harassing

her.  When questioned by the police about various scratches on his face and body, Villanueva attributed them to a fight with his wife.  Villanueva's wife, however, denied a fight had occurred.  He later claimed his scratches came from cutting weeds and from his cat.

Villanueva agreed to accompany the police to their station and consented to the collection of blood, hair, and saliva samples.  A few months later, the DNA test results connected Villanueva to the crime and he was arrested.  After waiving his rights, Villanueva confessed to the murder.  In his statement, he described how he had raped Montiel, strangled her, and left her dead on the bed. He also confessed to having stolen a radio from her kitchen, which he gave to a friend the following day.

The jury found Villanueva guilty of capital murder.  During the punishment phase, Campa did not call any witnesses at Villanueva's request. Campa asked Villanueva several questions on the record to demonstrate that Villanueva had instructed Campa not to call family members or any other witnesses to testify at this phase.  After considering two special issue questions, the jury sentenced Villanueva to death.

Villanueva unsuccessfully sought appellate review of his conviction and sentence[1] and subsequently failed in his state habeas application as well.[2] Villanueva then filed a federal petition for writ of habeas corpus, which was denied.  Villanueva now seeks a COA from this court raising six ineffective assistance of counsel claims.  He argues his trial counsel was ineffective in: (1) failing to secure a hearing and rulings on the motions filed by his prior counsel; (2) failing to interview and procure witnesses for the guilt-innocence phase of trial; (3) failing to investigate facts relevant to expert testimony and evidence in

---

[1] *Villanueva v. State*, No. 72,612 (Tex. Crim. App. Sept. 23, 1998) (unpublished).

[2] *Ex parte Villanueva*, No. 49,591-01 (Tex. Crim. App. Oct. 31, 2001) (unpublished).

No. 12-70015

support of the prosecution's case; (4) failing to conduct competent voir dire of the venire; (5) failing to effectively direct-examine and cross-examine witnesses, and committing other evidentiary errors; and (6) failing to present any evidence during the punishment phase of trial.

## II

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner must obtain a COA before he can appeal a district court's denial of requested habeas relief.[3] A COA will not issue unless the petitioner makes a "substantial showing of the denial of a constitutional right."[4] Such a showing is made by demonstrating that "the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."[5] Until a COA has been issued, federal courts lack jurisdiction to rule on the merits of appeals from habeas petitioners.[6]

All six of Villanueva's issues assert the denial of his constitutional right to effective assistance of counsel.[7] Violations of this right are assessed under the well-established *Strickland v. Washington*[8] test, which requires the petitioner to demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[3] 28 U.S.C. § 2253(c)(1).

[4] *Id.* § 2253(c)(2).

[5] *ShisInday v. Quarterman*, 511 F.3d 514, 520 (5th Cir. 2007) (alterations and emphasis in original).

[6] *Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003) (citing 28 U.S.C. § 2253(c)(1)).

[7] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").

[8] 466 U.S. 668 (1984).

different."[9]  Recognizing that "the purpose of the effective assistance guarantee . . . is not to improve the quality of legal representation" but instead "to ensure that criminal defendants receive a fair trial," the Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must be highly deferential."[10]

### III

Villanueva first faults Campa for not reurging and litigating the motions filed by prior counsel.  Campa, however, did file a "Motion To Adopt All Motions Of Prior Appointed Counsel," which the state trial court granted both orally and in writing.  Based on these facts, the district court denied this claim in summary fashion without addressing Villanueva's arguments.   We conclude that Villanueva failed to demonstrate that reasonable jurists would disagree with the district court's denial of this *Strickland* claim.

According to Villanueva, Campa was deficient because he failed to incorporate Villanueva's original case number within the text of his motion. While that number was printed at the top of the motion, someone penciled over it with "730975"—Villanueva's new case number following his reindictment. Villanueva therefore contends that this motion must have been filed under 730975 and that all prior motions bearing the original case number were never considered.  Villanueva also cites to Campa's affidavit, in which Campa states that it was an "oversight" on his part that the motion did not include the old case number in order to foreclose the assertion that this was a trial strategy.

Villanueva's argument fails to meet his *Strickland* burden; accordingly, the district court's denial was not unreasonable.  First, although Campa's affidavit admits to an oversight, Villanueva provides the court with no basis

---

[9] *Strickland*, 466 U.S. at 687-88, 694.

[10] *Id.* at 689.

upon which to find that an attorney's omission of a previous case number within the text of a motion is objectively unreasonable. Furthermore, even if we were to hold that Villanueva established deficient performance, he has not shown that he was prejudiced as a result. Villanueva assumes that Campa's motion was separately filed and that the previous motions were never considered—he shows no evidence that this actually occurred. Nor does he present any evidence to show that there is a reasonable probability that, but for Campa's error, the trial would have had a different result. Accordingly, we deny a COA on this claim.

## IV

Villanueva next claims that Campa failed to investigate his case, both before and after trial began. While the district court denied this claim as "vague and speculative," Villanueva contends that reasonable jurists could find that Campa's investigations were inadequate because Campa never interviewed the police officers or suppression hearing witnesses, and because he failed to hire a private investigator and criminologist. He further disagrees with the district court's rejection of the presumptive-prejudice test from *United States v. Cronic*,[11] which does not inquire into counsel's actual performance or require the defendant to show the effect it had on the trial in order to find prejudice in some circumstances.[12]

Under *Strickland*, an attorney has a duty to make reasonable investigations,[13] but a petitioner "who alleges a failure to investigate on the part

---

[11] 466 U.S. 648 (1984).

[12] *Cronic*, 466 U.S. at 659-60 ("Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Villanueva argues in the alternative that his defense was prejudiced based on the evidentiary errors Campa made, which are addressed in Part VII.

[13] *See Strickland*, 466 U.S. at 691.

of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial."[14] Although the presumptive-prejudice test in *Cronic* does not require inquiry into counsel's actual performance, the Supreme Court explicitly limited the scope of this test to "circumstances that are so likely to prejudice the accused," such as "the complete denial of counsel" or where designation of counsel was "either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard."[15] Neither was true in this case. Villanueva had assistance from counsel, and while Campa was hired three weeks before trial was originally scheduled to begin, this substitution occurred at Villanueva's request and after extensive questioning by the trial court to ensure that Villanueva understood the implications.

Barring *Cronic*, Villanueva must satisfy the general *Strickland* burden of stating with specificity how he was prejudiced by the failure to investigate. Villanueva's claim fails to meet this standard. The district court correctly notes that Villanueva did not identify what information Campa would have gleaned from interviewing the police officers or what additional investigation would have revealed that would have helped in the suppression hearing. Nor does Villanueva identify what evidence would have been revealed had Campa used a private investigator or a criminologist. We deny a COA on this claim.

## V

Villanueva next argues that Campa failed to investigate and utilize the forensic evidence properly. He asserts that independent DNA testing should have been conducted both during and after trial, and that Campa should have

---

[14] *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (emphasis added) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)).

[15] *Cronic*, 466 U.S. at 658-60.

retained an expert to assess the State's protocols given the allegations of noncompliance with DNA lab procedures.

Reasonable jurists could not debate the district court's denial of this *Strickland* claim because Villanueva does not demonstrate how Campa's actions were objectively unreasonable. He fails to explain why Campa should have conducted independent DNA testing prior to trial. Additionally, Campa's cross-examination of the State's experts and closing argument were sufficient to address any alleged noncompliance with lab procedure.[16] Accordingly, we also deny a COA on this claim.

## VI

Villanueva contends that Campa did not competently conduct voir dire because he failed to pursue potentially disqualifying issues. The district court held that Villanueva "inadequately briefed this claim in state court" because while he listed questions that Campa should have asked, Villanueva "did not link any unasked questions to any purportedly biased juror." Accordingly, under *Cullen v. Pinholster*,[17] the district court held that it was foreclosed from considering Villanueva's "new" arguments of prejudice in specific jurors since habeas review is limited to "what a state court knew and did." We agree.

In *Pinholster*, the Supreme Court held that review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."[18] AEDPA limits federal court review of state court decisions for contrary or unreasonable applications of "clearly established Federal law," which can only be determined by confronting the facts that were before the state court

---

[16] *See Harrington v. Richter*, 131 S. Ct. 770, 791 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation.").

[17] 131 S. Ct. 1388 (2011).

[18] *Pinholster*, 131 S. Ct. at 1398.

when it rendered its decision.[19] This circuit further explained that under *Strickland*, a petitioner alleging deficient performance during jury selection must identify "any particular juror [who] was in fact prejudiced" and must establish that had counsel's questioning focused on a specific area of bias, the bias would have been found.[20] The petitioner must also show prejudice caused by the deficiency such that "there is reasonable probability that the result of the proceedings would have been different."[21] Because Villanueva did not identify specific examples of bias that failed to be elicited due to deficient questioning or demonstrate how Campa's acts during voir dire affected the outcome of his case, reasonable jurists could not disagree with the district court's denial of his claim. We therefore deny a COA.

## VII

Villanueva's next *Strickland* claim argues that Campa was inept at direct examination and cross-examination and committed numerous evidentiary errors that prejudiced his defense. Villanueva identifies four categories in which Campa failed to make adequate objections: (1) hearsay objections, (2) leading questions and narrative answers, (3) chain of custody and authentication, and (4) speculative and conclusory testimony. In addition, Villanueva asserts that even if each trial error individually did not amount to *Strickland* prejudice, the cumulative effect of the errors did. We deny a COA on all of these claims.

Villanueva first objects to the district court's holding that the state habeas court reasonably found no constitutional error in counsel's failure to make hearsay objections. The district court cited examples to demonstrate the inconsequential effect of the unobjected-to evidence. Rather than contesting

---

[19] *Id.* at 1398-99 (quoting 28 U.S.C. § 2254(d)(1)).

[20] *See Neville v. Dretke*, 423 F.3d 474, 483 (5th Cir. 2005).

[21] *Id.*; *see also Clark v. Collins*, 19 F.3d 959, 965 (5th Cir. 1994).

these specific examples, Villanueva argues that they are not representative of Campa's deficiencies.  However, just as with his previous arguments, Villanueva provides no basis upon which to consider whether reasonable jurists could disagree.  Without particular allegations as to the examples the district court failed to consider, Villanueva has not established how counsel's performance was deficient.  Accordingly, we decline to grant a COA on this subclaim.

Villanueva next asserts that Campa failed to object when the prosecutor repeatedly led witnesses and allowed "devastating" narrative testimony.  This court has held that the "failure to object to leading questions and the like is generally a matter of trial strategy as to which [this court] will not second guess counsel."[22]  We have further held that there can be no *Strickland* claim where a petitioner fails to "explain how those instances likely would have resulted in a different trial outcome."[23]  Villanueva's sole argument is that the district court imposed a higher burden of proof for prejudice in violation of the Supreme Court's decision in *Berger v. United States*,[24] in which the Court held that prejudice to the accused can be presumed where there is prosecutorial misconduct.[25]  However, *Berger* involved a level of misconduct not alleged here.[26]  Furthermore, *Berger* concerned government misconduct whereas Villanueva challenges his retained counsel's performance.[27]  Accordingly, the policies

---

[22] *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993).

[23] *See id.*

[24] 295 U.S. 78 (1935).

[25] *See Berger*, 295 U.S. at 89.

[26] *Id.* ("[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential."); *see also id.* at 84 & n.* (prosecutor misstated evidence, deliberately misunderstood witness statements, assumed prejudicial facts not in evidence, and more).

[27] *Id.* at 80.

underlying *Berger* do not apply here.[28]  Because Villanueva presents no basis from which reasonable jurists could find prejudice, we deny a COA on this subclaim.

Villanueva next argues that Campa should have objected to the introduction of State's Exhibits 56 and 85 through 89 since they were not properly authenticated.  Although the district court denied this claim because Villanueva did not establish gaps in the chain of custody, Villanueva asserts that the "issue is not that Campa failed to object to evidence where there was a 'gap in chain of custody'" but that "Campa failed to object to evidence that had not been properly authenticated."  However, Villanueva failed to identify with specificity how these exhibits were improperly authenticated or, that *even if* they were not, that these exhibits could not have possibly been authenticated.[29]  Because reasonable jurists could not disagree that Villanueva failed to show deficiency or prejudice, we deny a COA on this subclaim.

Villanueva next contends that Campa failed to object to conclusory and speculative statements made by witnesses.  As stated previously, this court has held that the "failure to object to leading questions and the like is generally a matter of trial strategy as to which [this court] will not second guess counsel."[30]  This case bears no resemblance to cases where federal courts have considered

---

[28] *See id.* at 88 ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . .  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.").

[29] In his application, Villanueva specifies state evidentiary rule violations that were not presented in his state habeas application.  Accordingly, we are precluded from considering these "new" arguments.  *See supra* note 19 and accompanying text.

[30] *E.g.*, *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993).

evidentiary errors despite an asserted trial strategy.[31]   Accordingly, we also decline to grant a COA on this subclaim.

Lastly, Villanueva argues that the cumulative effect of Campa's failures to object prejudiced the outcome of his case.  The district court held that even if Campa had made each of the objections Villanueva argues he should have made, the objections would not have lessened the impact of the other evidence in this case.  In any event, as explained above, the lack of objections were either determined to be reasonable strategy or to not be errors at all.  Because Villanueva failed to show that Campa was ineffective, there is nothing to cumulate.[32]  We therefore deny a COA on this subclaim.

## VIII

In his final *Strickland* claim, Villanueva asserts that Campa failed to present mitigating evidence during the punishment phase of his trial.  Because Villanueva instructed Campa not to call any mitigating witnesses, he would ordinarily be precluded from bringing a *Strickland* claim under *Schriro v. Landrigan*.[33]  He argues, however, that his waiver was invalid because Campa inadequately advised him regarding the importance of mitigating evidence and

---

[31] *See supra* notes 26-28 and accompanying text.

[32] *E.g.*, *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.").

[33] 550 U.S. 465, 478 (2007) ("[I]t [i]s not objectively unreasonable for [a] court to conclude that a defendant who refuse[s] to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice . . . ."); *Sonnier v. Quarterman*, 476 F.3d 349, 362 (5th Cir. 2007) ("[W]hen a defendant blocks his attorney's efforts to defend him, including forbidding his attorney from interviewing his family members for purposes of soliciting their testimony as mitigating evidence during the punishment phase of the trial, he cannot later claim ineffective assistance of counsel."); *see also Clark v. Thaler*, 673 F.3d 410, 418-19 (5th Cir. 2012) ("When a petitioner argues that his attorney failed to investigate mitigation evidence, the Supreme Court has said the proper inquiry is 'not whether counsel should have presented a mitigation case,' but 'whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was *itself reasonable*.'" (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 523 (2003))).

because his waiver was not "informed and knowing."[34]  The State contends that no "informed and knowing" requirement exists for waiver of the right to present mitigating evidence, and that Villanueva's claim is indistinguishable in its operative facts from the claim rejected by the Supreme Court in *Landrigan*. Questions as to this claim are adequate to deserve encouragement to proceed further.  We therefore grant a COA on his final claim.

*     *     *

For the foregoing reasons, we DENY in part and GRANT in part the petition for a COA.

---

[34] *See Clark*, 673 F.3d at 422.