# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-70015

JORGE VILLANUEVA,

      Petitioner–Appellant,

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:02-CV-4122

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

In this habeas corpus proceeding, Jorge Villanueva, a Texas death-row inmate, argues that his trial counsel provided ineffective assistance by failing to investigate and present mitigation evidence during the punishment phase of his trial. The district court denied relief, and we granted a certificate of appealability (COA). We now affirm the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70015

## I

Villanueva was arrested for capital murder in October 1994. One attorney was appointed to aid in Villanueva's defense at that time, and co-counsel was appointed in May 1995. Villanueva filed grievances against his initial attorneys, and approximately three weeks before trial was scheduled to begin, counsel withdrew as a result of these grievances. Jerry Guerinot and Anthony Osso were appointed to replace them. The court reset the trial date for September 9, 1996. Guerinot and Osso prevailed on motions to have experts in psychiatry and criminology funded.

While still represented by Guerinot and Osso, Villanueva retained a new attorney, Philip Campa. On August 22, 1996, the court held a hearing on Campa's motion for substitution as counsel, during which the trial court questioned Villanueva on the record. Villanueva confirmed that he was aware that Campa had not tried a capital case. The court also discussed the procedures in a death-penalty case with Villanueva:

> The Court: If you're convicted of capital murder, there's a second part to the trial. Do you understand that?
>
> Villanueva: Yes.
>
> The Court: What is the second part of the trial if you're convicted of a capital murder?
>
> Villanueva: Well, there are only two things. I get life or the death penalty.
>
> The Court: That's correct. At that point if you are convicted of capital murder, there are certain issues that the jury will answer, certain issues that the jury will answer. If your lawyer seeks to designate experts, you're entitled to that. Do you understand that?
>
> Villanueva: Yes, ma'am.
>
> The Court: Now that you have retained counsel as opposed to having appointed counsel, there are different issues that are going to arise including the payment of those experts. Do you

2

understand that?  You have to line up those experts and make them available for trial if that's what your counsel wants.

Villanueva: But I don't have no money to pay them.

The Court: You need to talk to your lawyer. . . .  Your lawyer has told me that he is ready and I'm not going to grant you any continuances for obtaining witnesses at this late date including experts.

On September 11, 1996, voir dire began, and the guilt/innocence phase of trial commenced on October 1, 1996.  The state and defense delivered closing arguments on October 9, 1996, and the jury found Villanueva guilty of capital murder that same day.

The punishment phase began later in the day on October 9.  After the state presented its punishment witnesses, the defense rested without offering any evidence.  Campa then had the following colloquy with Villanueva out of the presence of the jury:

Campa: Mr. Villanueva, is it your decision not to have any of your family testify at the punishment phase of this case?

Villanueva: That's correct.

Campa: Did you give me the instruction not to call any of your family members to the stand?

Villanueva: That's true.

Campa: Did you also give me the instruction not to call any other witnesses to the stand at the punishment phase?

Villanueva: That's true.

Campa: Did you also decide not to take the stand during the punishment phase of your case?

Villanueva: That's true.

On October 10, both sides delivered closing arguments, and that same day, the jury returned a verdict, answering Texas's two special issues in a way that

required the court to sentence Villanueva to death. The Texas Court of Criminal Appeals (TCCA) affirmed Villanueva's conviction on direct appeal.[1]

In state habeas, Villanueva argued, *inter alia*, that Campa provided ineffective assistance of counsel (IAC) because Campa "wholly failed to investigate or prepare a defense" for the mitigation special issues. Villanueva's petition did not address the effect of his instructions to Campa to not call any mitigation witnesses.

The state habeas court rejected Villanueva's mitigation-based IAC claim. It found that Villanueva failed to demonstrate that Campa "did not investigate potential punishment evidence or that punishment witnesses were available and that their testimony would have benefited the defense." Alternatively, the court concluded that because Villanueva instructed Campa not to call mitigation witnesses, he had waived his mitigation-based IAC claim. Villanueva appealed to the TCCA, which adopted the lower court's findings and conclusions and denied relief.[2]

Villanueva then filed a federal habeas petition, which included his mitigation-based IAC claim. Noting that "Villanueva has not shown a basis to question his waiver," the district court concluded that Villanueva's decision to prohibit counsel from calling mitigation witnesses precluded his IAC claim. Additionally, the district court concluded that Villanueva's claim failed on the prejudice prong of *Strickland* because he failed to show what mitigation evidence should have been presented. The district court denied a COA on all of Villanueva's habeas claims.

---

[1] *Villanueva v. State,* No. 72,612 (Tex. Crim. App. Sept. 23, 1998) (not designated for publication).

[2] *Ex parte Villanueva,* No. WR-49,591-01 (Tex. Crim. App. Oct. 31, 2001) (not designated for publication).

No. 12-70015

In his application for a COA, Villanueva reurged his mitigation-based IAC claim, contending that his waiver of mitigation evidence was invalid because it was not "informed and knowing," such that he could pursue the underlying IAC claim.[3] This court granted a COA on the mitigation-based IAC claim but denied a COA on Villanueva's other claims.[4]

**II**

Villanueva's appeal of the denial of his habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[5] If a claim has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d)'s deferential standard applies. Section 2254(d) precludes a federal court from granting habeas relief unless the state court's adjudication of a claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6] An adjudication is "contrary to" clearly established federal law when the state court decision differs from how the Supreme Court decided a case on a set of materially indistinguishable facts.[7] Federal law is "unreasonabl[y] appli[ed]" when "the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts."[8]

---

[3] *Villanueva v. Stephens*, 555 F. App'x 300, 308-09 (5th Cir. 2014).

[4] *Id.* at 309.

[5] Pub. L. No. 104-132, 100 Stat. 1214.

[6] 28 U.S.C. § 2254(d).

[7] *Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[8] *Id.*

5

No. 12-70015

When a merits adjudication has occurred, a federal court's review is limited to "the evidence presented in the State court proceeding."[9] Additionally, even if no merits adjudication has occurred, a state court's factual findings are "presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[10]

## III

We analyze IAC claims under § 2254(d)(1) as mixed questions of fact and law.[11] To establish an IAC claim under the standard articulated in *Strickland v. Washington*, a petitioner must prove (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.[12] The state court adjudicated both prongs of Villanueva's IAC claim on the merits; therefore, Villanueva must prove that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[13] Villanueva's IAC claim founders on *Strickland*'s prejudice prong.

## A

The Supreme Court addressed a similar scenario in *Schriro v. Landrigan*.[14] Landrigan repeatedly blocked his trial counsel's efforts to present mitigation evidence.[15] In state postconviction proceedings, Landrigan

---

[9] 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011) (limiting review under § 2254(d)(1) to the record before the state court that adjudicated the claim on the merits).

[10] 28 U.S.C. § 2254(e)(1).

[11] *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

[12] 466 U.S. 668, 687 (1984).

[13] 28 U.S.C. § 2254(d)(1).

[14] 550 U.S. 465 (2007).

[15] *Id.* at 469-70.

brought an IAC claim alleging that his attorney had failed to investigate certain mitigation evidence.[16] The state court denied this claim, concluding that Landrigan's instructions to counsel to not present mitigation evidence precluded Landrigan from complaining in habeas that counsel should have presented other mitigation evidence.[17]

Section 2254(d)(1) applied to Landrigan's IAC claim, so the federal courts were precluded from granting habeas relief unless the "state court's adjudication of [the] claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.'"[18] The Supreme Court examined its own decisions on counsel's failure to investigate and present mitigation evidence.[19] Although these cases addressed counsel's duty to investigate, they proved insufficient to surmount § 2254(d)(1)'s deferential standard because the Court "ha[d] never addressed a situation" in which a defendant had "interfere[d] with counsel's efforts to present mitigating evidence to a sentencing court."[20] Accordingly, the Court concluded that "it was not objectively unreasonable for [the state postconviction] court to conclude that a defendant who refused to allow the presentation of any mitigating evidence could not establish *Strickland* prejudice based on his counsel's failure to investigate further possible mitigating evidence."[21]

---

[16] *Id.* at 471.

[17] *Id.*

[18] *Id.* at 473 (emphasis added) (quoting 28 U.S.C. § 2254(d)(1)).

[19] *Id.* at 478 (citing *Rompilla v. Beard*, 545 U.S. 374 (2005), *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Strickland v. Washington*, 466 U.S. 668 (1984)).

[20] *Id.*

[21] *Id.*

7

No. 12-70015

In this respect, Villanueva's IAC claim based on his counsel's failure to present mitigating evidence is similar to *Landrigan*. The Texas state habeas court concluded that because Villanueva "instructed defense counsel not to call any witnesses . . . during the punishment phase of trial," Villanueva had waived his mitigation-based IAC claim. Section 2254(d)(1)'s "clearly established" law requirement refers to the Supreme Court's decisions "as of the time of the relevant state-court decision."[22] The TCCA adopted the state habeas court's findings of fact and conclusions of law in Villanueva's case on October 31, 2001. *Landrigan* was decided almost six years later[23] and discussed Supreme Court decisions issued as late as 2005.[24] To be certain, the legal theory that the Court addressed in *Landrigan* is not exactly the same as the legal theory employed by the Texas courts in denying Villanueva relief. The state court in *Landrigan* concluded that a defendant who refused to allow mitigation evidence to be introduced could not later show prejudice[25] whereas the Texas courts treated Villanueva's refusal to allow mitigation evidence as a "waiver" of his IAC claim. But Villanueva cannot avoid the fact that, at the time the Texas courts adjudicated his IAC claim, the Supreme Court had "never addressed" a similar situation.[26] Accordingly, the Texas habeas courts did not act "contrary to" or "unreasonabl[y] appl[y]" Supreme Court precedent

---

[22] *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (internal quotation marks omitted).

[23] *See* 550 U.S. at 465 (issued May 14, 2007); *cf. Loden v. McCarty*, 778 F.3d 484, 499-500 (5th Cir. 2015) (addressing the Mississippi Supreme Court's application of *Landrigan*).

[24] *See Landrigan*, 550 U.S. at 478 (citing *Rompilla*, 545 U.S. at 381).

[25] *Id.*

[26] *Id.*

8

in concluding that a defendant waives his mitigation-based IAC claim when he instructs counsel not to call any mitigation witnesses. [27]

## B

On appeal, Villanueva attempts to sidestep this unfavorable parallel to *Landrigan* by challenging the validity of his waiver. Indeed, Landrigan himself attempted to argue that his decision not to present mitigation evidence was invalid because it was not "informed and knowing."[28] The Supreme Court noted that it had "never imposed an 'informed and knowing' requirement upon a defendant's decision not to introduce evidence."[29] Assuming *arguendo* that such a requirement existed, the Court concluded that Landrigan's waiver would have been valid.[30]

The State argues that Villanueva has forfeited the argument that his waiver was not informed and knowing because he failed to raise this issue in the district court. We agree. "[A] contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief."[31] Although the district court observed that "Villanueva has not shown a basis to question his waiver of the right to present mitigating evidence," this is the first time in the record that the validity of Villanueva's waiver is mentioned. Villanueva's own efforts to invalidate his waiver came for the first time in his COA application in this court; his filings

---

[27] *See* 28 U.S.C. § 2254(d)(1).

[28] *See Landrigan*, 550 U.S. at 478-79.

[29] *Id.* at 479.

[30] *See id.* at 479-80.

[31] *Pierce v. Thaler*, 604 F.3d 197, 215 (5th Cir. 2010) (quoting *Goodrum v. Quarterman*, 547 F.3d 249, 259 n.49 (5th Cir. 2008)) (internal quotation marks omitted); *accord Bower v. Quarterman*, 497 F.3d 459, 475 (5th Cir. 2007); *see also Miller v. Turner*, 658 F.2d 348, 350 (5th Cir. Unit B Oct. 1981) (holding a new constitutional challenge not raised in district court was not properly before court of appeals).

in the state and federal district courts are silent on the issue. Moreover, Villanueva has failed to explain why our normal forfeiture rule should not apply to this issue, despite the fact that the State raised forfeiture in its opposition to Villanueva's COA application as well as in its brief on appeal. We conclude that Villanueva has forfeited his effort to invalidate his waiver. Accordingly, we cannot disturb the state courts' conclusion that Villanueva's instruction to counsel not to call mitigation witnesses waived his mitigation-based IAC claim.

## C

In any event, Villanueva's IAC claim fails because he has not introduced sufficient evidence to satisfy *Strickland*'s prejudice prong. To establish prejudice based on counsel's failure to investigate, the petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."[32] Likewise, in a claim based on uncalled witnesses, the petitioner "must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable."[33]

Villanueva acknowledges that the state habeas record contains little to no evidence that should have been introduced in the punishment phase of his trial. Instead, he points to evidence of his good character and drug and alcohol problems introduced during the guilt/innocence phase of trial and contends that more mitigation evidence must be discoverable. He also notes that his counsel before Campa had secured experts for the punishment phase, but the record fails to specify their anticipated testimony. Because of the lack of

---

[32] *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)) (internal quotation marks omitted).

[33] *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

evidence in the state habeas record in support of the prejudice prong, Villanueva seeks an excuse from showing prejudice or an avenue to introduce new evidence in federal habeas.

Villanueva first contends the court should follow *United States v. Cronic*, which affords a petitioner a presumption of prejudice in certain situations.[34] However, *Cronic* only applies when an attorney's failure to subject the prosecution's case to adversarial testing is "complete."[35] During punishment, Campa cross-examined the state's witnesses and argued for a life sentence. Therefore, *Cronic*'s presumption of prejudice does not apply, and Villanueva must demonstrate prejudice under *Strickland*, namely that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[36]

Section 2254(d) prevents Villanueva from introducing new evidence supporting his mitigation-based IAC claim in federal court.[37] Villanueva argues that his state habeas counsel's "failure to submit more thorough supporting evidence" on his IAC claim was itself ineffective, such that the Supreme Court's decisions in *Martinez v. Ryan*[38] and *Trevino v. Thaler*[39] permit this court to remand for an evidentiary hearing in the district court. But this court has held that "*Martinez* does not apply to claims that were fully

---

[34] 466 U.S. 648, 658-59 (1984).

[35] *Bell v. Cone*, 535 U.S. 685, 697 (2002).

[36] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[37] *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *see also* 28 U.S.C. § 2254(d)(2) (also limiting federal review to "the evidence presented in the State court proceeding").

[38] 132 S. Ct. 1309 (2012).

[39] 133 S. Ct. 1911 (2013).

adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted."[40]   The Texas courts adjudicated Villanueva's IAC claim on the merits, and thus, *Martinez* and *Trevino* are inapposite.[41]

In sum, because there is no evidence in the state habeas record that shows that Villanueva was prejudiced by Campa's performance and because Villanueva does not have a right to introduce new evidence in federal court, Villanueva's mitigation-based IAC claim does not satisfy *Strickland*'s prejudice prong.

\*       \*       \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[40] *Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014).

[41] *See id.* at 395.